———o———

STATE OF MISSOURI, *ex rel.* P. R. SMITH, Relator, *vs.* THOMAS HOLLIDAY, State Auditor, Respondent.

1. *Township organization law—County Clerk's fees for duplicate tax bills under —Liability of State for.*—Where in counties having adopted the township organization law, the county clerk makes out duplicate tax bills or vouchers for the use of the township collector, the State cannot be held for any proportion of the fees specified in § 245 of the general revenue law; (Wagn. Stat. 1872, pp. 1213, 1214) for services so rendered. (See township organization law, Sess. Acts 1873, pp. 118, 119, §§ 11, 16, 17, and compare same with *Ibid.*, pp. 122–3, § 1.)

*Petition for Mandamus.*

*E. L. Edwards & Son, with Geo. Hubbert,* for Petitioner.

*Jno. A. Hockaday, Att'y Gen'l,* for Respondent.

NAPTON, Judge, delivered the opinion of the court.

In this case the relator charges that he was, on the 29th of November, 1875, clerk of Newton county, and that said county had adopted the township organization law of 1872, and amendatory acts; that as such clerk he made out tax bills for 1875; that the county court passed upon his account and allowed it, one-half to be paid out of the county treasury, and certified the other half to the State auditor, as properly chargeable to the State; that the auditor refused to allow such account; and a mandamus is therefore prayed for.

The auditor replied that there was no law fixing the fees for making out "tax bills," in counties under the township organization law, and at all events no law authorizing them to be paid by the State.

Under this township organization law, county clerks were required to make out the tax books, and extend the taxes thereon, just as they were under the general revenue law applicable to all counties—and for this service, it is conceded, the relator was paid out of the State treasury. But under the township organization law, the clerk was required to make out duplicate tax bills, or books, for each township in the county, for the use of the township collector, and it was for this service, and for fees specified in section 245 of the general revenue law, that this claim was made against the State.

That there is no express provision for the payment of these fees, seems to be conceded in this case, in the arguments on either side. But the relator relies on the 10th section of the township organization law of 1872, or the 11th section of the act which superseded it in 1873, as justifying an implication in favor of their payment. These sections are identical in their terms. They provide that "the county clerk shall keep faithful minutes of the proceedings of said court, and record all matters and proceedings in the same manner as is now or may be hereafter provided by law, in counties not having

adopted township organization. Such clerks shall perform all other duties incumbent on county clerks, under the laws governing counties which have not adopted township organization, and under this act, as well as under the laws now in force, or hereafter to be passed, shall receive the same fees as are now or may be hereafter allowed for similar services."

The 245th section of the general revenue law passed at the same session and about the same time as the passage of the township organization law, provides for fees to clerks: first, to the clerk of the county court, for extending the tax on the assessment book, three cents for each name, to be paid by the State and county in proportion to the number of tax columns used by each; second, for making a copy of the tax book for the use of the collector, including certificate and seal to same, for every hundred words and figures ten cents, one-half to be paid by the State, the other half by the county, etc.; third, for making an abstract of the tax book for the State auditor, four dollars, etc.

For these services thus enumerated, it is agreed that the relator was paid, but the township organization act (§ 16) provides that "the county clerk, upon the receipt of the township assessment lists, shall make a fair copy of them, by townships, which, together with the original lists, shall be laid before the county court at their April meeting in each year; after which he shall cause the taxes to be extended on said copy, and shall cause the same to be indorsed on the original list, the amount per cent. levied on each one hundred dollars worth of property, as taxes thereon, which original roll shall remain in the county clerk's office until the month of March next thereafter. The township clerk shall call on the county clerk during the month of March in each year, for the original assessment rolls of the previous year of their respective townships, which rolls they shall file in their townships."

Section 17 provides that "as soon as the taxes are extended on said copy, the clerk of the county court shall make out annually, for the use of the township collector, correct duplicate tax bills, side by side, in a well bound book, of all taxes

on all property assessed in the township, which tax bills shall set forth in alphabetical order the names of the persons owing taxes on real or personal property in each collector's district, the value of each tract or lot of land, and the amount of taxes thereon, the aggregate value of such property, assessed to each person, and the total amount of taxes due thereon, etc., etc."

It may be conceded, and is no doubt true, that the services of the clerk in making out these duplicate tax bills for each township in the county, are in some sense similar services to those rendered by clerks in counties where the township organization system does not prevail. They are clerical services, and rendered in the collection of State and county revenue. And it may be conceded that the legislature, by the 11th section of the act of 1873, above refered to, intended that the same fees should be paid the clerk that were allowed under section 245. But it would be a very liberal construction of the 11th section to infer that any part of these fees should be paid by the State. That the legislature of 1873 did not so understand it, is manifest from the act of March 24th, 1873, in which it is provided that "the clerks of the county court of all those counties which have heretofore adopted township organization, as provided for in the act of March 18, 1872, who have performed the services required of them by sections 15, 16, 17 and 18, in article 16 of said act, shall receive as compensation for said services, pay at the rate of ten cents for every hundred words and figures, two figures to be counted as one word, said compensation to be paid out of the county treasury." This provision would seem to show that the legislature were aware that no provision had been made in the act of 1872, for paying any fees for the services now claimed to be chargeable to the State, and fixed therefor their rate of compensation, and provided for their payment by the counties.

The provisions in the act of 1872, and the subsequent act of 1873, are substantially the same, except that these duplicates are called in the one "corrected lists," and in the other

"tax bills." In a case of doubt, we think the legislative construction is entitled to great weight. The increased expense of collecting the revenue under the experiment of township organization naturally induced the legislature not to impose any of these additional costs upon counties who declined to adopt the system.

We are therefore of opinion that the State auditor rightly refused to allow these charges. The mandamus is refused. The other judges concur.