FLYNN v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant*.

| 78 | 195 |
|----|-----|
| 96 | 515 |

| 78 | 195 |
|-----|-----|
| 43a | 553 |

| 78 | 195 |
|-----|-----|
| 109 | 361 |

| 78 | 195 |
|-----|-----|
| 117 | 240 |

| 78 | 195 |
|-----|-----|
| 133 | 480 |

| 78 | 195 |
|-----|-----|
| 76a | 520 |

| 78 | 195 |
|-----|-----|
| 84a | 570 |
| 85a | 493 |
| 86a | 150 |
| 86a | 436 |

| 78 | 195 |
|-----|-----|
| 95a | 743 |

1. **Action by Legal Representative for Death**: MEASURE OF DAMAGES. The measure of damages in an action brought by the legal representative of an employe of a railroad company against the company for his death, is not the fixed sum of $5,000, but a sum not exceeding $5,000. The right of action is given by section 3 and not section 2 of the Damage Act.

2. **Master and Servant**: WHAT RISKS SERVANT ASSUMES: NEGLIGENCE OF MASTER. A servant, by continuing in the business of his master after he becomes aware of defects in appliances furnished him by his master, does not necessarily assume the risk of all injuries which may result from such defects. If the defects grow out of the want of ordinary care and vigilance on the part of the master in providing or maintaining the appliances, and are not so serious but that with

care and prudence on the part of the servant they may be safely used, and at the request of the master he continues to use, and in using them exercises care and prudence, if injury result to him notwithstanding, he may hold the master liable.

3. ———: MASTER'S NEGLIGENCE. The liability of a railroad company for an injury sustained by an engineer through a defect in the track existing through the negligence of the company, will not be discharged upon proof that the air brake on the engine was out of order, that the engineer knew this, and that if it had been in order the accident might have been averted.

4. **Presumption of Care.** The law, out of regard to the instinct of self-preservation, presumes that a person who has suffered death by a railroad accident, was at the time of the accident in the exercise of due care, and this presumption is not overthrown by the mere fact of the injury.

*Appeal from Buchanan Circuit Court.*—Hon. Jos. P. Grubb, Judge.

Reversed.

*W. P. Hall* and *Strong & Mosman* for appellant.

*Woodson & Crosby* and *Pike & Pike* for respondent.

Philips, C.—John Flynn was an engineer on defendant's road, running a passenger train to and fro between St. Joseph and Council Bluffs. He was killed by the upsetting of his engine on defendant's road on the 23rd day of August, 1875. The plaintiff is his widow and sues for $5,000 damages. The grounds of negligence alleged in the petition are the bad and defective condition of defendant's railroad track at the point of disaster; the defective condition of the flanges of the wheels of the engine; the defective and unsafe condition of the air brakes and defendant's failure on notice to repair them, and its neglect and failure to provide the train with sufficient brakemen in the absence of the air brake. The answer tendered the general issue, and pleaded contributory negligence on the engineer's part.

The evidence showed that Flynn was a competent and experienced engineer, and made three trips a week over this

road. The engine in question was not the one he used on said road. His regular engine was out of repair. He ex- amined the engine assigned him and deemed it in order. On the 22nd day of August he ran it from St. Joseph to Council Bluffs. On the way the air brakes got out of order. He notified the conductor and required the brakeman to employ the brakes the balance of the way. On reaching Council Bluffs he informed the assistant master mechanic of the trouble, but it seems the defect in the air brake could not be repaired there, nor could the repair be made short of St. Joseph. Flynn's assigned duty required him to take this engine and train back to St. Joseph on the 23rd. He informed the conductor of the situation of the air brake and requested that the train be broke by the men. The evidence shows that for such train two brakemen were ordinarily sufficient, and that it was customary for the baggageman to perform the duty of brakeman when necessary. On this train there was but one regular brakeman, and the baggage- man did not appear to have performed this duty on this trip. On the way back to St. Joseph, while the train was running at "a usual rate of speed, about twenty miles an hour," the wheels of the engine jumped the rails and after running about 500 or 600 feet, went off, killing Flynn. The evidence tended to show that at this point the track was in bad condition, and that the engine was derailed in conse- quence of a low joint and that this low joint had existed for several days, and was perhaps known to some of the trackmen. There was no evidence that deceased was ap- prised of its existence, but there was evidence from which it might reasonably be inferred that he had notice of the generally bad condition of portions of the road. The evi- dence showed that with the air brake, the train might have been checked up before the engine upset, and with the ordinary brakemen it would require probably 400 or 500 feet to check it at the rate it was going. The evidence also showed that J. F. Barnard, general superintendent of de- fendant, issued on the 22nd day of July, 1876, an order to

W. D. Rowley, master mechanic of defendant, as follows: "Notify engineers not to run faster than card time between Wing Lake and Corning, and between Phelps and Nishnabotna, and to modify their speed as much as necessary for safety until the track can · be got into better condition." This notice was served upon Flynn a short time before the accident, and Flynn indorsed his name on it as evidence of service. The evidence also showed that the point where the engine and train left the track, and where Flynn was killed, was within the limits described in the notice.

For the plaintiff the court gave the following instructions:

1. If the jury find from the evidence that the road bed or track of defendant, at the point where the engine in charge of said John Flynn was thrown off the track, was defective or unsafe, or that the said engine at the time of the accident was defective or unsafe, and that defendant knew thereof, or might have known thereof by the exercise of reasonable care and diligence, and that the said engine so in charge of the said Flynn as engineer was so thrown off the said track in consequence of said defective condition of said track or of the said engine, after such defective condition of said track or said engine was known or ought to have been known by defendant, and that said Flynn received injuries in consequence of said engine being thrown off the track as the result of said defective condition of said railroad track or engine, of which said Flynn died, and that said · Flynn was exercising ordinary care and prudence at the time he received said injuries, and was guilty of no negligence directly contributing thereto, and if they further find from the evidence that plaintiff was the wife of said Flynn at the time of his death, then the jury will find for the plaintiff in the sum of $5,000.

2. Although the jury may find from the evidence that the track of defendant, at the point where the engine was thrown off, was unsafe or dangerous, or that the engine was defective or unsafe, or that the same was known to the

deceased; yet if the defective or dangerous condition of said track or engine was not of sufficient character that they could not be reasonably used by the exercise of skill and diligence, then the said Flynn, in using said track or engine as such employe of defendant, did not assume the use of said track or engine at his peril, and was only required to take and was responsible for the care incident to the situation in which he was placed in the use of said track or engine, and whether he exercised such care in the use of said track or engine at the time of the accident, is a fact for the determination of the jury.

The court then gave for defendant the following instructions:

3. If the jury believe from the evidence that the death of John Flynn was caused by the negligence or want of care on the part of the brakemen on the train in proof, the jury will find for defendant.

4. If the jury believe from the evidence that the notice in proof purporting to be signed by J. F. Barnard, as superintendent of defendant, was so signed, and that said Barnard was superintendent as aforesaid at the time of signing the same, and that deceased knew of said notice before the accident in proof, and said notice was in force at the time of the accident, and said accident occurred between Nishnabotna and Phelps by reason of a defect in defendant's track between said points, and by reason of his failure to modify the speed of the train, then the jury will find for defendant.

7. If the jury believe from the evidence that after said air-brake ceased to work, deceased informed the conductor of the train in proof at Council Bluffs that said brake would not work, and that said conductor must tell the brakemen of the train and the baggage master that they would have to break the train by hand to St. Joseph, and did not ask for additional brakemen, and that said conductor did accordingly direct said brakeman and baggage master to break said train to St. Joseph by hand, then defendant is not re-

sponsible for not employing additional brakemen, and if said accident was occasioned by the want of additional brakemen, they will find for defendant.

9. If the jury believe from the evidence that the negligence or carelessness of deceased directly contributed, either in part or in whole, to his death, they will find for defendant.

10. If the jury believe from the evidence that at the time of the accident the engine or train of defendant was in such condition that with reasonable care it could be used with safety, then for any injury caused by any defect in such engine defendant is not liable, and as to such injury they will find for defendant.

11. If the jury believe from the evidence that at the time of the accident the engine or train of defendant were in such condition that they could not with reasonable care be used with safety, and such unsafe condition was known to deceased, they must find for defendant as to any injury caused by the unsafe condition of such engine or train.

12. If the jury believe from the evidence that the track of defendant at the time and place of the accident was not in such condition as to be used with safety with reasonable care, and that deceased had notice of such condition, then plaintiff cannot recover for any injuries caused by such defect in the road.

13. If the jury believe from the evidence that the road of defendant at the time and place of the accident was in such condition that with reasonable care it could have been passed over by the train with safety, they will find for defendant for any injury caused by a defect in such road.

The court on its own motion gave the following instruction:

If the jury believe from the evidence that the air-brake in proof ceased to work after the train in proof left St. Joseph, and that it was in the same condition when said train left Council Bluffs, and the condition of said air-brake rendered the running of said engine and train dangerous to

the safety of said Flynn, of which fact of the defective condition of said brake and the danger to him from running said train without the use of said air brake, said Flynn was well acquainted, then said Flynn in starting on such trip, knowing said air brake to be in said condition, took upon himself the risk of all accidents which might occur by reason of said defective air-brake.

To the giving of said last mentioned instruction the defendant objected and excepted.

The defendant asked a number of other instructions, some of which are immaterial to be passed on, and such as are material will be considered in the proper connection.

This cause must be reversed. The circuit court erred in instructing the jury, if they found for plaintiff, to assess the damages at $5,000. This being an action by the legal representative of an employe of the railroad company, it accrued under section 3 of the Damage Act, and not section 2. In such case the measure of damages is "not exceeding $5,000." It may be less. Wag. Stat., § 4, p. 53; *Holmes v. Hannibal & St. Joseph R. R. Co.*, 69 Mo. 585.

*1. ACTION BY LEGAL REPRESENTATIVE FOR DEATH: measure of damages.*

As the case must be remanded for re-trial, it is necessary to determine, for the guidance of the trial court, some questions raised on other instructions given and refused on the first trial.

The defendant complains most of the second instruction given for plaintiff, which declared that although Flynn knew of the alleged defect, "yet if the defective or dangerous condition of said track or engine was not of sufficient character that they could not be reasonably used by the exercise of skill and diligence he did not assume the use of said track or engine at his peril, and was only required to take and was responsible for the care incident to the situation in which he was placed in the use of such track or engine, and whether he exercised such care in the use of said track or engine at the time of the accident, is a fact for the determination of the jury." Defendant's counsel insists, for the

rule as applicable to every state of facts, that the employe takes upon himself the risks incident to the character of his employment, and that when he has notice of the existence of defective machinery or implements or appliances connected with his employment, he cannot recover for injuries resulting therefrom.

The general doctrine between master and servant is now pretty well settled. A person entering the service of another takes upon himself, in consideration of the promised compensation, the natural ordinary risks of his employment, the perils incident to the performance of his work, including the negligence of his fellow-servants. And the master on his part is bound to use ordinary care and vigilance in providing suitable structures, engines, road-tracks and proper servants. *Ford v. Fitchburg R. R. Co.*, 110 Mass. 240, 255; *s. c.*, 14 Am. Rep. 598; *Snow v. Housatonic R. R. Co.*, 8 Allen 441; *Flike v. Boston, etc., R. R. Co.*, 53 N. Y. 549; *s. c.*, 13 Am. Rep. 545; *Smith v. St. Louis, Kansas City & Northern R'y Co.*, 69 Mo. 32. The master does not become the absolute insurer of the safety of his servant; nor is he bound under all circumstances to provide for him the most approved or best improved machinery and equipments, or such as are absolutely safe. His care in this respect is ordinary precaution. What is ordinary care cannot be determined abstractly. It is necessarily a relative term. It must be measured by the nature of the work to be done, the instruments to be used, the hazard and peril of the situation. The law by " ordinary care" means simply the caution and vigilance which reasonable and prudent men exercise under like circumstances. *Cayzer v. Taylor*, 10 Gray 274, 280; 2 Thompson on Neg., 982, 983; *Ford v. Fitchburg R. R. Co., supra*, 256.

While the servant, by the terms of his undertaking, assumes the risks and dangers of his employment, it must be observed that these are the usual and ordinary risks incident to the particular work in which he is engaged. It does not embrace in every instance casualties and injuries

resulting from neglect of the corresponding duty of the master. "This requires him (the master) to use due care in supplying and maintaining suitable instrumentalities for the performance of the work or duty which he requires of the servant, and renders him liable for damages occasioned by a neglect or omission to fulfill his obligation, whether it arises from his own want of care, or that of his agents to whom he entrusts the duty." *Snow v. Housatonic R. R. Co.*, 8 Allen 447. This doctrine springs from the fact that the negligence or malfeasance of the master enhances the risk to which the servant was exposed beyond that which was natural to the risk he assumed. *Wedgwood v. C. & N. R'y Co.*, 41 Wis. 478. This duty of the master is not discharged by simply providing or having made at the outset suitable and reasonably safe machinery and instruments, but he must maintain them by keeping them in repair or exercising reasonable care and watchfulness to guard against their being out of order and unsafe. *Ford v. Fitchburg R. R. Co., supra*, 261; *Wedgwood v. C. & N. R'y Co., supra.*

It is equally well settled as a general rule that where the servant, having notice of the existence of defective machinery or bad road-bed or track or of incompetent and reckless fellow servants, voluntarily enters upon duty with such instruments and co-laborers, he assumes the risk and cannot recover for any injury resulting therefrom. But this rule, if it would be inaccurate to say has its exceptions, yet its application is more or less controlled and varied by the special facts and circumstances of the case. In other words, the law is and ought to be a rational science, furnishing a system of practical rules, working always in harmony but possessing such flexibility as to secure in each particular case as exact justice as is possible. So, if a servant takes employment on a railroad, knowing that his fellow-servants are unskillful and careless, he could not, in case of injury resulting therefrom, insist on a right of recovery based on the rule of the duty of the company to select prudent and discreet servants. So, if he knows that

an engine is out of order, or there is a particular defect in a given part of the road-bed or track, yet without more he accepts service on such engine and road, and is thereby injured, he cannot in an action for damages invoke the rule that imposes on the company the obligation to furnish a reasonably safe engine or track. Nevertheless, there are circumstances under which a person, being in the employ of a railroad, having notice of defects in equipments and machinery, may recover for an injury resulting therefrom, as where, on discovering the defect, he is assured by the superior that it is not dangerous or that it will be timely repaired, whereupon in reliance thereon he remains, being himself careful and vigilant, he may recover for the injury resulting from such unrepaired defect. *Holmes v. Clarke,* 6 Hurl. & N. 349; *Clarke v. Holmes,* 7 Hurl. & N. 937; *Patterson v. Pittsburg & C. R. R. Co.,* 76 Pa. St. 393; *s. c.,* 18 Am. Rep. 412; *Ladd v. New Bedford R. R. Co.,* 19 Mass. 412; *s. c.,* 20 Am. Rep. 331, and authorities; *Stoddard v. St. Louis, Kansas City & Northern R'y Co.,* 65 Mo. 520; *Keegan v. Kavanaugh,* 62 Mo. 232.

Again, take the case now under review. It appears from the evidence that the engine furnished deceased to make the trip with had not been used theretofore by him. It was the duty of the company to furnish him one reasonably safe and in good working order. He looked over it before starting out, and it was apparently efficient. On the way the air-brake proved defective and useless. Suppose the engineer did not consider his train so easily managed without it, would the law, or court, or common sense justify him, *en route,* in abandoning his assigned post of duty and leaving his engine and the train of passengers on the track, at the peril of losing his position, when, with the assistance of brakemen and ordinary care he had every reason to believe he could safely go through? He would be esteemed by all railroad men as recreant to his high trust and wanting in that staid judgment and nerve which is the basis of a character suited to the responsible office of an engineer.

On his arrival at Council Bluffs it appears he did, in compliance with the regulations of the company, report the trouble to the assistant master mechanic. It then became the duty of the company to repair the air-brake or provide another engine. But this could not be done there, or at least was not done. The only office performed by the air brake is to stop the train more easily and suddenly than by the old method of brakemen. It in nowise affected the working or security of the engine. In case of derailment it might enhance the chances of safety by enabling the engineer to arrest more immediately the train than with brakemen. Could it be said, under such circumstances, that the engineer, by continuing at his post, took all the risk of returning with his train to St. Joseph? There was no imminent danger, nor could it be said any danger was obvious. He had the day before come over the track on time with safety, with the air-brake disabled. To have declined to serve his employer under such circumstances would have been inexcusable and justly merited dismissal.

The observation of Napton, J., in *Keegan v. Kavanaugh*, 62 Mo. 232, is quite appropriate: "The primary duty of the servant is obedience, and it is not to be expected that he will, upon mere imaginary danger, of which he may be conscious, assert his right to relinquish his employment. He naturally looks to his employer for the observance of all reasonable and proper precautions, and his continuance in the service, when such precautions have not been observed, is rather to be attributed to confidence reposed in those to whose superior judgment he yields. If the risk is such as to be perfectly obvious to the sense of any man whether servant or master, then the servant assumes the risk. But if it is a case where no such obvious risks are incurred, and where it was fair to presume that the employer had been guilty of no negligence, the rule in law as well as common sense and justice is, that the master is responsible for damages, if any ensue." In *Patterson v. Pittsburg & C. R. R. Co.*, *supra*, 393, this same doctrine is

announced.   Referring to *Clarke v. Holmes*, 7 Hurl. & N. 937, and *Snow v. Railroad Co.*, 8 Allen 441, the court says; "In both these cases the defects from which the accidents arose were known to the employes, but as they were injured in the discharge of duties imposed upon them by their employers, such knowledge was adjudged not to raise a presumption of concurrent negligence. This doctrine is obviously just and proper. The servant does not stand on the same footing with the master. His primary duty is obedience, and if when in the discharge of that duty he is damaged through the neglect of his master, it is but meet that he should be recompensed. The general principle as recognized by our own cases, *inter alia*, *Caldwell v. Brown*, 3 P. F. Smith 453, and *Frazier v. Pennsylvania R. R. Co.*, 2 Wright 104, is, that the employer is bound to furnish and maintain suitable instrumentalities for the work or duty which he requires of his employes, and failing in this he is liable for any damages flowing from such neglect of duty." This language is employed with approbation by this court in *Conroy v. Vulcan Iron Works*, 62 Mo. 35.

Speaking for myself, I do not approve of the language "threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill." This language involves a new rule liable to great misconstruction. It makes the liability of the master dependant on the certainty or uncertainty of injury. Under it, as to those injuries certainly to follow, the servant assumes the risk, and as to those which are uncertain the servant assumes none, the master all, of the responsibility. The term "immediate injury" implies that in such case the servant takes the risk, but when the danger is such that injury cannot or may not occur till some far-distant time, the servant assumes no risk at all. The opinion of the judges in *Clarke v. Holmes*, *supra*, expresses more correctly the true idea: "There is a sound distinction between the case of a servant who knowingly enters into a contract to work on defective machinery and that of one who on a

temporary defect arising is induced by the master, after the defect has been brought to the knowledge of the latter, to continue to perform his service under a promise that the defect shall be remedied. In the latter case the servant by no means waives his right to hold the master responsible for any injury which may arise to him from the omission of the master to fulfill his obligation. No doubt a defect thus arising in machinery may be such that no man of ordinary prudence would run the hazard of working on it. If a jury should find that a party complaining had materially contributed to the injury by his own rashness, the action could not be maintained, inasmuch as it is well established that a plaintiff, who has materially contributed to his own injury by his own negligence, cannot recover although he may show negligence in the opposite party. But the question whether the injury of which the plaintiff complains is to be ascribed wholly to the negligence of the defendant, or whether the plaintiff has had any share in bringing it about, is one wholly for the jury." Crompton, J., page 946, says : " We need not consider the personal knowledge, in such a case, the plaintiff had of the danger, because there was a neglect of duty on the part of the defendant in not keeping the machinery fenced. The party cannot recover if he has contributed to the accident, * * knowledge is only a part of negligence."

Applying the law thus ascertained to the facts of this case so far as the air-brake is concerned, it must be borne in mind that it could have had no possible agency in derailing the engine, in the first place. Its disability could only have prevented the earlier arresting of the motion of the engine and possibly prevented its upsetting. Whether it would or not, was a question for the jury. Flynn's knowledge of its condition would not prevent his recovery, provided he ran the engine under circumstances of prudence and care free from negligence on his part contributing directly to the injury. On the other hand, if the company had exercised due care and inspection in furnishing a rea-

sonably safe engine, and the same suddenly, while *en route*, became disabled and after notice it failed and neglected to repair the defect, when in its power to do so, it would, under circumstances of due care on the part of the engineer, have been answerable for the injury, if any, resulting therefrom. Or if, after such notice, it was unable to make the needed repair at Council Bluffs, or to furnish another engine, but started the engineer back with the defective one, it was its duty to have provided the usually necessary brakemen to run the train over the road to render it safe so far as such a mode of breaking was safe, and if it failed of its duty in this respect, and injury resulted therefrom to the engineer exercising due care, the company was liable. Of these facts, under proper instructions, the jury are the judges.

As to the condition of the track of the railroad, it was the duty of the defendant to have maintained it in a reasonably safe condition for its employes. The engineer had nothing to do with its inspection and repair. That belonged to other employes of the defendant, between whom and the engineer the relation of fellow-servants did not exist, so as to exempt the defendant from liability to the engineer for any neglect of duty of the trackmen. On this all the recognized authorities are agreed. The defendant is chargeable for neglect to repair its track when it has notice of the defect or might with the exercise of due care and inspection have discovered the existence of the defect. Notice of this fact to the employes of the company entrusted with the inspection and repair would be notice to the company. Whether the defect alleged in the petition existed, and whether it caused the injury in question, and whether defendant had notice thereof, or might have known of it in the exercise of proper diligence, are questions of fact for the determination of the jury.

The defendant insists that the order issued by the general superintendent was equivalent to notice to the engineer that the road was unsafe, and, therefore, if he continued to

run over it he assumed the risk. The order was a command to the engineers, " not to run faster than card time between Wing Lake and Corning and between Phelps and Nishnabotna, and to modify the speed as much as necessary for safety until the track can be got into better condition." There is nothing in the proof to indicate that the engineer was running faster than card time, or that the speed was necessarily hazardous. As these were matters entrusted to the engineer, it was a question of fact for the jury to determine whether he was running in violation of the regulation. If he was and the injury was attributable to his disobedience, he cannot recover. This order did in effect convey information that in the opinion of the superintendent the track was not in good condition. But it is evident that its condition was not such as, in his opinion, to render it unsafe to run a train over it within " card time " and modification of the speed according to the circumstances. It also conveyed the assurance that the track was to "be. got into better condition." The evidence showed that this. work of reparation was in progress at the time of the accident. Conceding that the engineer had notice of the general bad condition of the road, this notice from the superintendent, his superior officer, was in effect a declaration that the road was not necessarily hazardous, and the engineer could continue to run over it, exercising care, and that the superintendent would remedy the defect. The engineer had a right to rely on the supposed superior judgment of the superintendent and to continue to run under the assurance of remedying the defect. Authorities cited, *supra*.

In addition to this, the engineer had been running over this road nearly every day, had passed over it the day before. It cannot be said he was guilty of contributory negligence in running over it when hurt. *Ford v. Fitchburg R. R. Co.*, 110 Mass., *supra; Lewis v. St. Louis & I. M. R. R. Co.*, 59 Mo. 495 ; *Snow v. Housatonic R. R. Co.*, 8 Allen 450. In *Patterson v. P. & C. R. R. Co., supra*, 394, the court says : " Let it be conceded that the switch in ques-

14—78

tion was dangerous, yet doubtless many trains had passed over it safely, and hence a man of common prudence might well conclude that though it was more than ordinarily dangerous, yet many more trains might in like manner be passed over it in safety. Under such a state of facts the conductor might properly rest upon the judgment of his superiors who requested him to continue its use hoping that by extra care and skill he might avert accidents until the switch was reconstructed or properly repaired."

*Hawley v. N. C. R'y Co.*, 82 N. Y. 370, is most pertinent. The engineer knew that the road was somewhat out of repairs, yet it did not appear that he knew of the particular defect, or that the danger was very great. He was running, under orders, an engine ahead of a passenger train, and was injured by his engine overturning, caused by the bad condition of the road. The court says: "While the plaintiff knew that the road was somewhat out of repair, and that he incurred some danger in running his engine, it does not appear conclusively that he knew how badly it was out of repair, or that the danger was imminent or very great. Three or four passenger trains, besides freight trains, passed over the road daily, each way, and it does not appear that any other accident had happened from the bad condition of the road. The plaintiff and other engineers had frequently run their engines over the road in the same way in which the plaintiff ran his on the occasion of the accident, and had done so with safety. The plaintiff was ordered by competent authority to run his engine just as he did and he had received assurance that the road would soon be put in repair. We must take into account plaintiff's position. His business was that of an engineer, and unless he obeyed orders and ran his engine he would have been obliged to abandon defendant's service. Of one thus situated the law should not be too exacting. We must assume that the officers of the defendant who had charge of the road and must have known its condition, deemed it safe, and the plaintiff had the right to rely somewhat upon

their judgment. Other employes of the road and hundreds of passengers were daily trusting their lives upon the road, and on the day of the accident he was ordered and did precede a passenger train. Under such circumstances, was the plaintiff bound to set up his judgment against that of all others and determine for himself that the road was absolutely unsafe for the passage of his engine, and abandon his position as engineer, or take upon himself the risk caused by defendant's negligence? We think, under all the circumstances, and upon all the evidence given on both sides, that it was a question for the jury to determine whether the plaintiff acted with reasonable prudence and discretion in venturing to run his engine over the road." See also *Dorsey v. P. & C. Construction Co.*, 42 Wis. 583, and *Cummins v. Collins*, 61 Mo. 524.

Instruction number two, given on behalf of plaintiff, while not subject to the unqualified objections made by the learned counsel, was as an abstract proposition, too comprehensive, and as a rule of law it could not be of universal application. The instruction ought to predicate as a basis for its application the necessary facts to be found by the jury, and if the jury find them to exist, then they may be instructed that Flynn's knowledge that the air-brake was disabled and that the track was not in good condition, would not prevent plaintiff's recovery under the existence of such facts, provided Flynn was not, at the time and place of the injury, running his train in violation of the directions of the superintendent, and was otherwise exercising due care; of all which the jury are to determine from all the facts and circumstances in evidence.

In view of the law arising on the facts of this case, the second, fifth, sixth and eighth instructions, asked by defendant, were properly refused, especially in view of other instructions conceded to the defendant.

The eighth instruction refused was calculated to confound. It submitted a question almost impossible of solution. If the bad condition of the track, the low joint,

caused the derailment of the engine, that was the *causa causans* of the injury, and if it existed through the fault of defendant, the possibility that the engine might have been checked before it overturned had the air-brake worked, would not have discharged the defendant from liability. It is not the case of two or more concurring and independent causes, producing an injury, where the plaintiff himself is the author of one of the causes.

The fourth instruction given for defendant ought not to be conceded again unless the proof is different, tending at least to show that Flynn, having knowledge of the defect at the point of the accident, failed to "modify the speed of the train." The law, out of regard to the instinct of self-preservation, presumes that the deceased at the time was in the exercise of due care, "and this presumption is not overthrown by the mere fact of injury." The burden rests upon the defendant to rebut this presumption. *Buesching v. St. Louis Gaslight Co.*, 73 Mo. 229, 233.

The judgment of the circuit court is reversed and the cause remanded for re-trial in conformity with this opinion. MARTIN, C., concurs; WINSLOW, C. absent.

For the reasons given in the foregoing opinion, Judges HOUGH, NORTON, RAY and SHERWOOD were of opinion that the judgment of the circuit court should be reversed and the cause remanded. Judge HENRY concurred in the conclusion reached.