JAMES B. HYATT, Respondent, v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, November 9, 1885.

1. PLEADING—ISSUES NOT MADE BY MERE INTRODUCTION OF EVIDENCE.—Where contributory negligence is not pleaded—the answer being simply a denial—and there is no demurrer to the evidence, and no instructions offered on that point, the mere introduction of evidence without objection, would not make an issue, in the absence of a statement in the pleading, and instructions based on such evidence. A party must stand or fall in this court, on the theory by which he tried and submitted his case in the court below.

2. DAMAGES—MENTAL SUFFERING AN ELEMENT IN.—Mental pain and suffering is recognized as an element of damage in nearly every state in the union, and in none more clearly than in Missouri. *Porter v. Hannibal & St. Joseph Railroad Company*, 71 Mo. 66.

ON REHEARING:

3. NEGLIGENCE—NOT PROVIDING AGAINST KNOWN PERILS AS PROMISED.—It is negligence for which the master may be held responsible, if knowing of any peril which is known to the servant also, he fails to remove it, in accordance with assurances made by him to the servant that he will do so. Such case may be planted on contract, but it is not essential to do so. The assurances remove all ground for the argument that the servant by continuing in the employment engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurances. *Flynn v. R. R. Co.*, 78 Mo. 195. It then becomes the *duty* of the master to protect in the manner assured.

4. CONTRACT—ACTIONS FOUNDED UPON—HOW GOVERNED.—There is a class of cases arising out of contract, where, by reason of the contract, the law raises a duty, for the breach of which *duty* an action on the case may be maintained; and *in such cases*, the contract being the basis and *gravamen* of the suit, must be alleged and proved. Where, too, from the facts, the duty arises, and there is also a contract which is alleged, and made the gist of the cause of action, although the action be *case*, it is substantially founded upon contract, the rights of the parties will be governed by the law of contract. Cooley on Torts, 90.

5. —— BREACH OF—MEASURE OF DAMAGES.—Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive * * * should be such as may fairly and reasonably be considered, either arising naturally from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. The damages must be compensatory, and actual pain and suffering compose elements of compensatory damages.

APPEAL from Livingston Circuit Court, HON. JAMES M. DAVIS, Judge.

*Affirmed.*

The facts are sufficiently stated in the opinion of the court.

STRONG & MOSMAN, for the appellant.

I.   The only cause of action which can be gleaned from the petition is one on a *contract* to recover for the breach thereof, and the alleged promise is a *nudum pactum*, which the law will not enforce.  *State v. County Court*, 17 Mo. 507 ; Smith on Contracts, 167 ; Chitty on Contracts, 51 *a ; Graves v. Wait*, 59 N. Y. 156 ; *Pierce v. Cursey*, 37 Wis. 232.

II.   Independently of contract, there is no such duty imposed by law on defendant as that counted on in this case.   And no action *in tort* can be maintained upon the facts stated in the petition.   *Nevin v. Pullman Co.*, 106 Ill. 236 ; *Clark v. R. R. Co.*, 64 Mo. 446 ; *Field v. R. R. Co.*, 76 Mo. 614.

III.   Since the cause of action must be held to be one upon contract the sixth instruction is erroneous : (1) Because it allows damages which are not the direct proximate results of defendant's failure to comply with its contract.   *R. R. Co. v. Berney*, 71 Ill. 391 ; *Henry v. R. R.*, 76 Mo. 295 ; *Hoadley v. Transportation Co.*, 115 Mass. 304.   (2) Whether the cause of action be *ex contractu* or *ex delicto*, said instruction does not fairly present the law, and is erroneous.   *Fisher v. Gobell*, 40 Mo. 475 ; *Warren v. Stoddart*, 105 U. S. 227 ; *Alexander v. R. R.*, 37 Ia. 264 ; *Hulett v. R. R.*, 67 Mo. 239 ; *Cagney v. R. R.*, 69 Mo. 416.   Said instruction does not declare the law applicable to the case, and is incomplete as a statement of the law of the case.   *State v. Johnson*, 76 Mo. 121 ; *Cooper v. Johnson*, 81 Mo. 483.   It was also error to give for plaintiff the fourth instruction.   *Turner v. Gibbs*, 50 Mo. 556 ; *Sanders v. Brosius*, 52 Mo. 50.

H. LITHGOW and J. B. ROGERS, for the respondent.

I.   The damages for a breach of contract should be *compensatory*, and such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of

the breach of it. *Booth v. Spuyten D. Ry. Co.*, 60 N. Y. 437; *United States v. Behan*, 110 U. S. 338; *McHose v. Fulmer*, 73 Pa. St. 365; *Hammer v. Schoenfelder*, 47 Wis. 455; *Turner v. Telegraph Co.*, 41 Iowa 453; *Parks v. Tel. Co.*, 13 Cal. 422; 1 Sutherland on Damages, 74 *et seq.*

II. Damages for breach of contract may include compensation for inconvenience, and for injury to the feelings, upon the ground that these different elements were in the contemplation of both parties, when they made the contract as likely to result from a breach of it. *Williams v. Vanderbilt*, 28 N. Y. 217; *Hobbs v. Ry. Co.*, 10 Q. B. 111; *R. R. v. Levy*, 12 Am. and Eng. Ry. Cases, 96. 1 Sutherland on Damages, 156.

III. Mental suffering is a proper element of compensatory damages when connected with a personal injury. *Hamilton v. R. R. Co.*, 53 N. Y. 25; *R. R. v. Warner*, 108 Ill. 538; *Smith v. R. R.*, 23 Ohio St. 10.

IV. Our practice act has abolished the formal distinction between actions on contract and *in tort*, and some actions on contract sound *in tort.* Chitty on Contracts, 767; 2 *Ibid*, 1333; *Stanley v. Bircher*, 78 Mo. 245.

V. The master owes the servant the duty of providing him a reasonably safe place to work, and of protecting him from danger while at work. And the servant does not assume a risk which is expressly excepted from his contract of service. *Farwell v. R. R. Co.*, 4 Metcalf 49; Cooley on Torts, 659–690.

ELLISON, J.—A trial of this cause in the circuit court resulted in a verdict for plaintiff for five hundred dollars, and defendant appeals. The evidence on the part of the plaintiff showed that defendant, through its agent, Lewis, employed plaintiff, with seventy-five or one hundred others, to shovel snow drifts from its track, and agreed to give him one dollar and a half per day and three dollars per night, for his work. The weather being intensely cold, and trains blockaded, defendant was anxious to get the

track cleared. Plaintiff and others went to work, and got out as far as Cameron by six o'clock that night. As the evening advanced it began to snow and grow colder. Under these circumstances, plaintiff and his fellow laborers hesitated about going up the track that night. One Woodard, who was general superintendent of defendant's railway, upon learning of this objection and hesitation, told them to go on with the work that night, that he had trains out in the drifts, and if they would go out, he would keep cars near them in which they might warm themselves during the night. Upon this statement, and relying on this inducement, plaintiff and others proceeded with the work. They were taken to a drift near a siding called Keystone, about nine miles from Cameron, worked there all night and until eleven o'clock next day. Appellant, after unloading the men, took the train back to Cameron, but left an engine on the siding at Keystone until about twelve o'clock. Before the engine was taken away, respondent having become very cold, went back to it for the purpose of warming himself, but those in charge of the engine refused to let him get on, and plaintiff returned to his work. Next morning a train was brought out from Cameron by the superintendent, with breakfast for the men. While breakfast was being passed out through the car window, respondent got in the cars, respondent telling the superintendent that he was freezing—that his foot was frozen, and that he would have to get warm—but he "G—d d——d us out of there." On cross-examination of plaintiff, he stated that he knew that he was freezing as early as ten o'clock that night; that he staid there all night, knowing he was freezing; that when he found he would not be permitted to get on the engine he voluntarily went back to work, because he did not want to leave the other men; that he went back of his own choice; nothing prevented him from quitting work, and that nothing hindered him except his desire not to leave the men. He made no inquiry for a house or place of shelter; he supposed the section men who were among the crowd knew if

there were any houses "handy," but he made no inquiry. He did not see any material to make a fire with, and did not look for any. That there were cultivated fields on each side of the track, and that next day he, with others, broke timber off the fences and built a fire. In consequence of this exposure, plaintiff's feet were frozen, necessitating the amputation of his great toe and otherwise crippling him.

At the close of the evidence the court gave the following instructions for plaintiff:

"6. If the jury find for the plaintiff, they may allow him for his loss of time, his expenses incurred in and about curing himself, and in making up the verdict, they may take into consideration his bodily and mental suffering and pain, the extent of his injuries, and allow him such sum as they may believe from the evidence plaintiff has been damaged, as herein stated, not exceeding the sum of three thousand dollars."

"4. If the jury believe from the evidence that about the time alleged in plaintiff's petition, W. R. Woodard was the general superintendent of defendant's railroad, with full power to hire and discharge the employes thereon, and to control the movement of the engines and cars used on said road, and that plaintiff was employed to shovel snow, and induced by said Woodard to go out on the night as stated in plaintiff's petition, under, and by an agreement between said Woodard and plaintiff, that said Woodard would keep one or more cars at or near the place where plaintiff was to work, so that he might warm himself, as occasion required, but that said Woodard failed to keep a car at said place (or provide means so that plaintiff could get warm), and that by reason of such neglect by said Woodard, plaintiff had one of his feet so badly frozen that it became necessary to amputate a portion of one of them, then defendant is liable in this case, and they should find for plaintiff."

Appellant makes earnest objection to both of these instructions. It will be seen that instruction number

four ignores the question of respondent's duty to protect himself, if it was reasonably in his power to do so. If it had been an issue in this cause, whether respondent, notwithstanding defendant's neglect to provide him with fire, might not with reasonable exertion have prevented freezing, we think the instruction would have been wrong in omitting that question. But while evidence seems to have been introduced on this subject without objection, contributory negligence is not pleaded, the answer being simply a denial, and there being no demurrer to the evidence, and no instructions offered on the question by the defendant, we cannot say the mere introduction of evidence without objection, would make an issue in the absence of a statement in the pleading, and instructions based on such evidence. Parties cannot be permitted to urge here questions not submitted below. It is evident that defendant has not chosen to submit the question of plaintiff's conduct to the jury, and "he must stand or fall, in this court, by the theory on which he tried and submitted his case in the court below." *Walker v. Owen*, 79 Mo. 568. It is undoubtedly true that if he could, by reasonable effort, have found a house near by, or if he could have thus found fuel with which to build a fire, it was his duty to do so. There was evidence to show that there were houses within reach, and that fuel might have been obtained, as the men did, in fact, make a fire for themselves next morning.

It is not the law, that if one hires another to work for him in the cold, promising to provide fire for his comfort, and fails to do so, that such person may deliberately permit himself to freeze, though surrounded with material to prevent it.

Viewing this action as in tort, and not strictly for breach of contract, the sixth instruction for plaintiff is correct. Mental pain and suffering is recognized as an element of damage in nearly every state in the union, and in none more clearly than in Missouri. *Porter v. H. & St. J. Ry. Co.*, 71 Mo. 66; *Trigg v. St. L., K. C. & N.*

*Ry. Co.*, 74 Mo. 147 ; *Russell v. Town of Columbia, Ib.* 480.

There are other points of objection made by defendant, and without stating them in detail, we think them not well taken.

The judgment is affirmed. Philips, P. J., concurs in the result; Hall, J., concurs.

### ON RE-HEARING.

Ellison, J.—The main question discussed on the rehearing, granted in this cause, is whether this is an action *in tort.* or *assumpsit.* It being assumed by appellant, that if the action is on the contract, the sixth instruction given for plaintiff is erroneous. It will be seen that in the view we take in this case, the result is the same, whether it be viewed as *ex delicto* or *ex contractu.*

I am fully persuaded, however, that the case is properly denominated an action in tort. When the change in the weather gave evidence that the night would be intensely cold, and that a person would possibly perish if he went to an isolated place where no fire could be had, the plaintiff becoming alarmed at the outlook, and refusing to go to the place desired by defendant on account of his fears, which the evidence shows to have been reasonable; he is assured by defendant that if he will go on with the work, it will take care that he is protected, by providing fire for him.

I see no reason for distinguishing this from the cases which have frequently arisen, of defective machinery, on being discovered by the servant, he receives assurances that it will be provided against; or of the servant's apprehending danger and receiving assurances that no danger will befall him. The theory on which a master is relieved from liability to servant, is that he assumes the risk of the employment.

Judge Cooley, in his work on Tort, page 559, says : " It is also negligence, for which the master may be held responsible, if, knowing of any peril, which is known to

the servant also, he fails to remove it, in accordance with assurances made by him to the servant that he will do so. This case may be planted on contract, but it is by no means essential to do so. If the servant, having a right to abandon the service because it is dangerous, refrains from doing so, in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless, or until, he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing in the employment, engages to assume its risks. So far as the particular peril is concerned the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that the parties may, and should, when practicable, come to an understanding between themselves regarding matters of this nature."

This rule, as laid down by Judge Cooley, is set out and expressly approved by the unanimous opinion of the supreme court of the United States in the case of *Hough v. Ry. Co.* (100 U. S. 213, 225). Furthermore, I am unable to distinguish this case in principle from *Keegan v. Kavanaugh* (62 Mo. 232); *Conroy v. Vulcan Iron Works* (62 Mo. 35); *Flynn v. Ry. Co.* (78 Mo. 195).

In *Conroy v. Vulcan Iron Works*, the servant was engaged in and about a coal hoist, and through a defective construction of the hoist, he was thrown under a coal car and injured. He had noticed the timbers were not secure, and had so stated to an officer in charge, who told him he would make the proper repairs. The court held the case was properly one for the jury, and remarked that the servant had brought the doubtful character of the timbers to the attention of his superior, and had received a promise that the necessary repairs should be made; that the servant had a right to presume that the master would be mindful of his rights, and would take the proper steps to secure his safety.

*Keegan v. Kavanaugh* was where a servant hesitated

about going down an embankment which was not shored
or propped, whereupon the master ordered him to go on,
which order he obeyed, and in consequence, was killed.
The court held in this case that the order amounted to
an assurance that there was no danger, and the servant
was justified in obeying it with that interpretation. It
will be noticed in these cases that the defect in the tim-
bers and the character of the embankment was perfectly
apparent to the servant in each instance; yet the assur-
ance given by the master is held to relieve him of what
would otherwise have been characterized as negligence
sufficient to have prevented a recovery. The assurances,
as is said by Cooley, remove all ground for the argument
that by continuing the employment, he engaged to assume
the risk.

So in the case of *Flynn v. Ry. Co.* (78 Mo. 195),
where the evidence tended to show knowledge of the
defects which caused the injury, and that the attention
of the proper officers was called to such defects by the
servant, the court, Philips, J. says: "There are circum-
stances under which a person being in the employ of a
railroad, having notice of defects in equipments and
machinery, may recover for an injury resulting there-
from, as where, on discovering the defect, he is assured
by the superior that it is not dangerous, or that it will
be timely repaired, whereupon, in reliance thereon, he
remains, being himself careful and vigilant, he may re-
cover for the injury resulting from such unrepaired de-
fect."

As was said by Judge Napton in *Keegan v. Kava-
naugh* (62 Mo. 232), "the primary duty of the servant is
obedience. He naturally looks to his employer for the
observance of all reasonable and proper precautions, for
his safety." And though it is true that a servant when he
engages in the service of his master engages to assume the
risk of the employment, yet if he apprehends any partic-
ular danger, and on making it known to the master,
receives from him assurances that the danger or peril
will be provided against, such assurance being acted on

by the servant, relieves the case in that instance of the assumption of that risk.

I repeat that I am unable to distinguish, in principle, this case, from those cited from our supreme court.

What difference can there be in an assurance against danger from defects in machinery and against danger from being extraordinarily exposed to the rigor of extraordinary weather? If, as was said, the master cannot prevent the severity of the weather, he can very well provide against it. Neither can the master prevent the breaking of the machinery, or apprehended accidents in many cases, but he may well provide against injury therefrom, even though the machinery does break or the accident happen. He may provide means of escape, or otherwise protect his servants. Notwithstanding the defendant might not have been liable in this case if he had not promised to provide protection from the extraordinary weather; notwithstanding that from the simple employment of plaintiff, without more, it might not have been the duty of the defendant to provide fires, yet when the assurances were given, and the plaintiff was induced thereby to undertake the extraordinary work, it became the *duty* of the defendant to protect him in the manner assured.

This is not an ordinary hiring, like as if one should hire another to go into the timber to get out wood or logs, as was said in argument. In such case no one would contend there was any obligation on the hirer to provide fire. But here is an extraordinary emergency. A storm has blockaded defendant's track, so as to stop the running of trains, so as to catch their passenger trains, loaded with passengers, in the drift. Men are needed to work, day and night, without regard to the intense severity of the weather; needed to work at a place where there was no habitation, and where there was nothing with which fire could be made. The plaintiff, having been at work during the day, and, noticing it was again storming and the weather growing yet colder, and, realizing that to go to a point that night, where there was no means to pro-

vide a fire, he might possibly perish with cold, refuses to go, makes known his fears to the general superintendent of defendant's railway, and receives from him assurance that this peril will be provided against. Relying on such assurance, he is led into the situation he would have avoided, but for the assurance, the promise not being kept, and the defendant frozen in consequence.

It is not the duty of a master to a servant to provide him with shelter, ordinarily, but railroads have been built, and are perhaps now being constructed, across sterile, uninhabited, and uninhabitable countries, or sections of country. If a servant, realizing that he is being sent to perform labor at such a place, refuses to go on account of the peril to his health or life, receives assurances that shelter will be provided when needed, and under such assurance goes, or permits himself to be taken, to a point, perhaps hundreds of miles from a habitation, and there, in consequence of the non-compliance of his master, he perishes, or is bodily injured, is not the master liable, and liable to an action of tort? Illustrations might be multiplied, but they will readily suggest themselves without being set out here. In my judgment, there was no necessity for plaintiff's alleging the promise in the form of a contract or agreement to provide fire. I think it was enough that plaintiff, after working all day for the price of one dollar and a half, as agreed, found he was expected to proceed that night, some nine miles up the track from Cameron, to a point where no shelter, fire or fuel could he had ; that a storm then beginning, the weather growing more intensely cold, and giving evidence of an approaching unprecedented cold night, had a right, before proceeding further, to ask and accept assurances from his employer that he would be provided with protection.

There is no doubt but that plaintiff could have legally quit defendant's service on the evening he received the assurances as to the fire.

Says the court in *Hough v. Ry. Co.* (100 U. S. 225), quoting from Judge Cooley : "If the servant, having

the right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume the risks."

It was the plaintiff's duty to defendant to comply with these assurances, as much as it would have been to have protected him from an embankment, or from dangerously defective machinery; and it is as much liable in tort in the one case as the other.

But, conceding for the moment, that plaintiff has alleged a contract and non-performance thereof by defendant; yet it by no means follows that this is necessarily an action of *assumpsit* and not *case*.

"There is a class of cases arising out of contract, where by reason of the contract, the law raises a duty, for the breach of which *duty* an action on the case may be maintained; and in such cases, the contract being the basis and *gravamen* of the suit, must be alleged and proved. Where, too, from the facts the duty arises, and there is also a contract which is alleged and made the substance and gist of the cause of action, although the action be *case*, it is substantially founded upon contract, the rights of the parties will be governed by the law of contract." *Frink et al. v. Potter*, 17 Ill. 406.

In this connection Cooley says, on page 90 : "Passing, now, from a consideration of torts as they are found to be akin to or coincident with public wrongs, we may briefly direct attention to another side, on which they seem to be mere breaches of contract. Indeed, in many cases an action as for a breach of contract may be brought by the same party on the same state of facts."

While plaintiff states a contract in his petition he seems full well to realize that there was, notwithstanding, also a duty, on the part of defendant to plaintiff, for he alleges that defendant violated its *duty* in that behalf.

If, however, this action should be viewed as *ex contractu*, the result is the same. Damages for mental pain and suffering are compensatory as distinguished from exemplary. Authorities are abundant to this effect; 3 Sutherland on Damages, 259, 260, 261 ; 2 Thompson on Negligence, 1258.

Mental pain and suffering are inseparably connected with bodily injury. The rule being that "where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in the respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

It remains to be seen whether bodily injury and consequent mental suffering were not in contemplation of the parties to this action, at the time of their conversation at Cameron. A recital of what was said between them is a sufficient answer to the query. Plaintiff was afraid to go out to the place required for fear of being frozen. *He* was, therefore, certainly contemplating that he would likely freeze, if he went on that night. Defendant, learning of his fears, and appreciating their reasonableness, promises and agrees that if plaintiff will proceed, he will provide fire and shelter to keep him from freezing. *Defendant*, therefore, also certainly had in contemplation, that if he violated his faith in this regard, the plaintiff would likely be exposed to such result. The injury, then, which did actually happen, would seem to have been in the contemplation of the parties. Indeed, it is the *very thing* contracted against. Under the rule of damages for breach of contract, plaintiff must be fully compensated for the breach. And, as we have seen, mental pain and suffering compose elements of compensatory damages. The decisions of *Mendock v. Ry. Co.* (133 Mass. 15), and *Walsh v. Ry. Co.* (42 Wis. 24), while

holding the facts in each of the cases, did not justify such element of damages, yet each assert the principle above stated. In the case from Massachusetts the contract was simply to convey plaintiff from Springfield to North Adams; this was all the contract in the case. While *en route*, however, at Pittsfield, defendant's conductor, who was also an officer, arrested plaintiff for evading his fare, and placed him in charge of two policemen, who detained him during the night in a place of detention provided for arrested persons. Mental suffering, arising from the sickness contracted in the prison, was held not within the contemplation of the parties when they contracted for plaintiff's transportation from Springfield to North Adams; and very properly so; for it could not be said that the parties in that case could reasonably have contemplated that if defendant failed to carry plaintiff to his destination, he would also be imprisoned and maltreated.

The case of *Walsh v. Ry. Co.* was where the defendant contracted to take plaintiff, with others, on Sunday, from Watertown to Madison and return. The breach being a failure to bring him back. It is held, in this case, that injury to health and mental distress were not proper elements of damage, under the contract. But here it could not be said that the parties to this contract would reasonably contemplate or suppose that if plaintiff was left in the city of Madison over night, he would take sick. The court, in this case, set out and adopted as its opinion, the opinion of the English judges in *Hobbs et ux. v. London & South Western Ry. Co.* (10 Law Rep. [Q. B.] 111). Chief Justice Cockburn is quoted as saying: "What infinite difficulty there would be in attempting to lay down any principle or rule which shall cover all such cases; but I think that the nearest approach to anything like a fixed rule is this: that to entitle a person to damages by reason of a breach of contract, the injury for which compensation is asked should be one that may be fairly taken to have been contemplated by the parties as the probable result of the breach of the contract.

Therefore, you must have something immediately flowing out of the breach of contract complained of, something immediately connected with it, and not merely connected with it through a series of causes intervening between the immediate consequence of the breach of contract and the damage or injury complained of."

Archibald, J., in the same case, says: "I concur in the observations which have been made by my lord and my learned brothers; and I would only add, without expressing anything in the form of a rule, that, in case of breach of contract, the party breaking the contract must be held liable for the proximate and probable consequences of such breach, that is, such as might have been fairly in the contemplation of the parties at the time the contract was entered into."

The result is, we affirm the judgment. Hall, J., concurs; Philips, P. J., concurs in the result.