SMITH v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant.*

1. **Railroad Companies**: DUTY TO EMPLOYEES AS TO MECHANICAL APPLIANCES. Railroad companies are bound to use appliances which are not defective in construction; but as between them and their employees they are not bound to use such as are of the very best or most improved description. If they use such as are in general use, that is all that can be required.

   This principle applied to the use of the T rail for a guard to railroad switches, it appearing that although a guard made of U rail would be safer for employees, and would answer the purpose of the company equally well, yet the T was the one in general use.

2. ———: ———: KNOWLEDGE OF DANGER. A brakeman who continues in the service of a railroad company with knowledge that the guard of a switch is made of T rail, cannot recover for injuries sustained in consequence of his foot being caught between the guard and the frog, notwithstanding it may appear that if the guard had been made of a different rail it would have been less dangerous.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

*Wells H. Blodgett* for appellant.

*L. C. Slavens* for respondent.

HENRY, J.—Plaintiff was employed as a brakeman by defendant, and in attempting to uncouple some cars, was knocked down and his foot was run over by the car next behind him, inflicting an injury of so serious a nature as to render amputation of the leg above the knee necessary. He went between the cars while they were in motion, removed the coupling pin, then went back to take out the link, and while walking between said cars his right foot outside, and his left foot inside of the rail, his left foot was caught and held fast between the guard-rail and that of the main track. It was thus that the accident occurred, and this action is to recover damages for the injury. The particular negligence alleged in the petition was, first, that the guard-rail was unnecessary where it was placed; and, second, that said guard-rail was constructed of railroad

iron, known as the T rail, instead of a different kind of rail, which would have been as serviceable to defendant and less dangerous to its employees.    The first ground was abandoned on the trial, and plaintiff, relying on the second, introduced evidence tending to show that a guard-rail of railroad iron, known as U rail, would have been as serviceable to the company and less dangerous to its servants ; that owing to the form of the U rail his foot could not have been caught and held as it was in the T rail.

Donnelly, who testified for plaintiff, stated that the T rail is in general use in this country; that there are some U rails in use on the bridge at Kansas City ; that he knew of no other place where that kind of rail was in use. Knickerbocker, for plaintiff, testified that he had had about twenty years' experience in the construction of railroads, laying tracks, &c.; that he worked on the Illinois Central railroad in 1854, and on an Iowa railroad in 1856, and subsequently on the Fort Scott and Hannibal & St. Joseph railroads; that he never had anything to do with any except the T rail; never saw the U rail ; that he knew nothing of it but from the works he studied.    The evidence showed conclusively that the T rail is that generally used, and that the U rail is but little used by railroad companies.

The plaintiff had been about six days in defendant's employment when the accident occurred.    He had, before entering into defendant's service, been engaged three or four years on the Illinois Central, on which road the T rail was in use.    He knew there was a switch at the place where he was injured, and that it was of T rail, and testified that generally there were guard-rails where there were switches, and could not say that he ever saw a switch without a corresponding guard-rail.    J. M. Buckley and Mr. Emerson both testified to an experience in railroading of several years, on different roads, and to an acquaintance with the roads running into Kansas City, also the Illinois Central, the Pennsylvania Central, the Lafay-

ette & Indianapolis, the New Albany & Salem and others, and that they never saw any other than the T rail used in the construction of guard-rails.

For the plaintiff the court instructed the jury as follows:

1. If the jury find from the evidence in this cause that the guard-rail belonging to and used by defendant in operating its road, and carrying on its business as a part of said road or appurtenances, was, from the situation or construction thereof, unsafe for employees of said railroad company employed in operating said road, and that the same, i. e., said guard-rail, might have been so made, situated or constructed as could have answered as well all the uses of said defendant in operating its said road, and at the same time have been safe for its employees while engaged in the discharge of their duties, in operating said road, and that the defendant knew this, or might have known it by the exercise of reasonable care and diligence, then the jury are instructed that the defendant is liable to the plaintiff for damages for any injuries which, from the evidence, they find he has received in consequence of such unsafe guard-rail, after such want of safety of the same was known, or by the exercise of reasonable care and diligence might have been known to the defendant; and provided, also, they believe from the evidence that plaintiff, when he received such injuries, was exercising ordinary care and diligence, and did not know of such unsafety of such guard-rail.

2. If the jury find from the evidence in this case that the guard-rail used by the defendant, when the plaintiff was injured, was, from its make or construction, unsafe, and that defendant knew thereof, or might have known thereof by the exercise of reasonable care and diligence, and that plaintiff was injured by his foot being caught in said guard-rail, the jury are instructed that the defendant is liable to plaintiff for any injuries he has received in consequence of such defect in the make and construction of

said guard-rail after it was known, or could have been known by the defendant; if they further believe that the plaintiff was exercising ordinary care and prudence at the time he received the injury, and did not know of the defect in said guard-rail in its make and construction.

The following, asked by defendant, were refused:

3. The plaintiff was bound to exercise such care an prudence as was commensurate with the danger of the employment in which he was engaged, and if you believe that, at the time of the happening of the injuries complained of, plaintiff was not exercising such care and prudence as was commensurate with the danger incident to his employment, when by the exercise of such care and prudence he could have avoided the injury, then he cannot recover in this action.

15. If the evidence shows that the defendant used, at the place where plaintiff was hurt, the most approved style or kind or tracks and guard-rails, and that the same were in general or universal use in this country, or this part of the country, and that the same were placed or located in the usual or approved methods in use by the best constructed and conducted roads of the country, then, in such case, the plaintiff cannot recover.

There is a perplexing confusion and conflict in the authorities with regard to the duty of a railroad company to its employees, in the matter of furnishing implements and machinery for them to work with. In some of the cases dangerous and defective machinery and implements are confounded. Machinery is not necessarily defective because dangerous. The most perfect steam-engine requires skill and care in its management, and is a dangerous agent. Circular saws, planing machines and nearly all machines used in wood work are dangerous, but not, therefore, necessarily defective. This distinction must be kept in view in determining all questions which arise in suits for injuries received by employees in using implements and machinery furnished them by the employer.

If the employer furnish defective machinery to an employee ignorant of a defect which was, or might have been, known to the employer by the use of proper care and vigilance, he is liable to the employee for any injury the latter may sustain in operating the machine with proper care on his part. This is all that was decided in *Porter v. The Hannibal & St. Jo. R. R. Co.*, 60 Mo. 162. As was said by Bacon, J., *Warner v. Erie Ry. Co.*, 39 N. Y. 471: "We are not now dealing with the liability which a railroad corporation assumes in respect to the safety and security of passengers transported on their road for a compensation, and in regard to whom they become absolute insurers against all defects which the highest degree of vigilance would detect or provide against. The liability here, if there is any, is measured by that lower standard which all the authorities recognize in the case of an employee, and which is answered if the care bestowed accords with that reasonable skill and prudence which men exercise in the transaction of their accustomed business and employments." *Lewis, Admr., v. St. Louis & Iron Mountain R. R. Co.*, 59 Mo. 495, is not in conflict with the foregoing views of the New York court in the decision of the question before the court. The plaintiff's intestate was a brakeman, and, in coupling cars, stepped along as they moved, partly forward and partly out toward the rail, until he reached the rail, when, taking a step sideways to get clear of the rail, his right foot went into a hole, which caused him to fall, and in falling his left foot was caught by the wheel of the car, which ran over and crushed it. The hole had been dug by steamboat men for a purpose of their own, and had with the knowledge of other brakemen been there several days, and the attention of the section foreman had been called to it. The evidence tended to show that plaintiff's intestate was ignorant of its existence. The principal question in the case was, whether the instruction for plaintiff was correct, which declared, that defendant was responsible if the risk of injury to the plaintiff was in-

creased by the hole being there, and it was allowed to remain after defendant knew of its existence, or might, by the exercise of reasonable diligence and care, have known thereof, and if the injury was received in consequence of the hole remaining after defendant knew, or might have known of its existence.  Upon the hypothetical case thus put to the jury, no doubt could be entertained of defendant's liability.  The instruction was proper, and the court so held, but the principle controlling that case is wholly inapplicable to this.  In discussing the questions involved in that instruction, Wagner, J., who delivered the opinion, remarks: "The rule has long been established, and it is founded in reason and justice, that it is the duty of railroad companies to keep their road and works, and all portions of the track, in such repair and so watched and tended, as to insure the safety of all who may lawfully be upon them, whether passenger or servants, or others. They are bound to furnish a safe road, and sufficient and safe machinery or cars.  The legal implication is, that the roads will have and keep a safe track, and adopt all suitable instruments and means with which to carry on their business."  This paragraph of the opinion is relied upon by respondent, and, if it is to be taken literally, without qualification, it furnishes some support to the doctrine announced in plaintiff's first instruction.  What is meant by a safe track is not very clear.  An absolutely safe track is one on which no accident could occur, attributable to the track.  On the best roads, in construction and management, accidents do occur, and a strictly safe track is no where to be found.  The remarks we have quoted, taken literally, without qualification, are disapproved.

The plaintiff who avers, must prove negligence.  Is the fact that there is another kind of rail, of which a guard-rail might be constructed which would be safer for employees, and would equally answer its purpose, sufficient to render the company liable to an employee for injury received by him in consequence of the failure of the com

pany to use that other kind of rail? Is proof of that fact proof or any evidence of negligence on the part of the company? Plaintiff's first instruction declares that it is. Wharton, in his Law of Negligence, section 213, says: "An employer is not required to change his machinery in order to apply every new invention, or supposed improvement in appliance, and he may even have in use a machine or an appliance for its operation shown to be less safe than another in use, without being liable to his servants for the non-adoption of the improvement; provided the servant be not deceived as to the degree of danger that he incurs." Again, in section 244: "When an employee, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if he is subsequently injured by such exposure. Hence, to turn specifically to the consideration of the employer's liability, an employee who contracts for the performance of hazardous duties, assumes such risks as an incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain." The authorities cited by him in support of these propositions fully sustain the text. Take the case of an engineer, who for years has been operating just such an engine as that he is employed to run, and is injured by an explosion which would not have been so likely to occur if an improvement or appliance had been furnished by the employer, in use elsewhere. Would the employer be liable to him in an action for damage because he had not furnished such improvement or appliance? If the railroad companies are required to take up their rails whenever a better rail is manufactured, because it would afford greater security to their employees, and to discard their machines whenever a more perfect machinery is invented, or be liable to any employee who may be injured in using the old machinery, it would impose upon them pecuniary burdens which would compel them to suspend the operation of their roads.

In *Wonder v. The Baltimore & Ohio R. R. Co.*, 32 Md. 411, the court remarks : " In the case before us the question depending upon a diversity of opinion as to whether the eye-bolt or the hook is the better mode of fastening the brake, is immaterial, as both seem to be approved appliances, tested by trial and experience; and if it were conceded that the eye-bolt has superior merits, it by no means follows that the defendant was bound to discard the hook that had been used for a long time, and on so many trains without accident.  A master is not bound to change his machinery in order to apply every new invention, or supposed improvement in appliances, and he may even have in use a machine or an appliance for its operation shown to be less safe than another in general use, without being liable to his servants for the consequence of the use of it.  If the servant thinks proper to operate such machinery, it is at his own risk, and all that he can require is that he shall not be deceived as to the degree of danger that he incurs."  Wood, in his Law of Master and Servant, says, section 331 : " The employer is not bound to employ the latest improvements in machinery, and is not liable for an injury which might have been avoided if such improved machinery had been in use."

In *T. W. & W. Ry. Co. v. Asbury*, 84 Ill. 434, which was an action by his administrator to recover damages for an injury received by an employee, the court remarked : " They (railroad companies) are not required to seek and apply every new invention, but must adopt such as are found, by experience, to combine the greatest safety with practical use."  That case goes far enough in that direction, and we think too far, in regard to the duties it exacts of the employer to the employee.  The principle announced in the above extract applies to the relation of carrier and passenger, but is more exacting of the companies, with respect to employees, than we think warranted by the authorities.  There is no fault to be found with what was decided in the case.  It is an authority, we think, against

this plaintiff's first instruction, considering the evidence in the cause. Even the doctrine announced in the paragraph quoted from that case will not sustain the judgment in this. The evidence does not show that U rail "has been found by experience to combine the greatest safety with practical use." Reason and the weight of authority alike condemn the first instruction given for the plaintiff. The liabilities of railroad companies to their passengers, and their liability to their employees, are to be distinguished, as in *Warner v. The Erie R. R. Co.*, 39 N. Y. 471, and *Tinney v. The Boston & Albany R. R. Co.*, 62 Barb. 218. The highest degree of diligence is required in the one case, and the lower standard in the other.

Applying these principles to this case, what right has plaintiff to recover from the company? He was an experienced railroad man, thirty-five or forty years of age, had worked for years on railroads constructed as defendant's was. He had never seen any other than a T rail used. He knew that the guard-rail was at the place where he was injured, and that it was made of T. rail. This was his own testimony, and he proved by other witnesses that the U rail would have been less dangerous, although it was but little used in this country; his own witnesses stating that the most they knew of the U rail they had learned from books, and not from observation. This, with evidence of the particular manner in which he received the injury already detailed, and the extent of his injury, was the case made by the plaintiff, and his evidence neither proved, nor had any tendency to prove negligence on the part of the defendant which made it liable in damages for the injury plaintiff received. The instruction asked by defendant at the close of plaintiff's evidence, that it was not sufficient to warrant a verdict for plaintiff, should have been given. The first instruction for plaintiff, as already indicated, was also erroneous. Defendant's third instruction should have been given if there had been any evidence tending to show carelessness on the part of plaintiff, but there was none.

We think that under the circumstances of this case, the fifteenth instruction asked by defendant should have been given. The evidence showed that the plaintiff was fully acquainted with the risk he incurred from the nature of his employment and the kind of rail used for guard-rails on defendant's road. It might not be a proper instruction in a case where the employee was inexperienced and ignorant of the danger he incurred in the work he was employed to perform. The judgment is reversed. The other judges concur.

REVERSED.