JOHN E. MUIRHEAD, Respondent, v. THE HANNIBAL & ST. JOSEPH RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, December 7, 1885.

1. PRACTICE—INSTRUCTIONS NOT BASED UPON EVIDENCE.—It is error to give an instruction based upon assumed facts not appearing in evidence.

2. RAILROADS—DUTY TO EMPLOYES—PROTECTION AGAINST ACCIDENTS—DEGREE OF CARE.—It is the duty of a railroad company, towards its employes, in prosecuting its business, and in making up its trains to run on its road, to use care, skill and caution to furnish to its employes reasonably sound and safe cars, and to protect the lives of its servants ; and the degree of care, skill and caution must be proportionate to the dangerous nature of the means, instruments and appliances used. Following *Porter v. R. R. Co.*, 71 Mo. 72.

3. —— NEGLIGENCE—USE OF MACHINERY.—The plaintiff who avers negligence must prove it. Proof that another machine was safer than the one used by the railroad company, or that another means or manner of using it was safer, was not evidence of negligence. Following *Smith v. R. R. Co.*, 69 Mo. 37.

4. —— NOTICE OF DEFECTS—RELIANCE UPON THE JUDGMENT OF SUPERIOR.—There are circumstances under which a person, being in the employ of a railroad, having notice of defects in equipments and machinery, may recover for an injury resulting therefrom, as

where, on discovering the defect, he is assured by the superior that it is not dangerous, or that it will be timely repaired, whereupon in reliance thereon he remains, being himself careful and vigilant, he may recover for the injury resulting from such unrepaired defect. *Flynn v. R. R.*, 78 Mo. 204.

**5.** ———— USE OF DEFECTIVE MACHINERY.—The master may use any reasonably safe machine he chooses to use, but the master may not use a defective machine, unless it is as safe as the complete machine would have been.

APPEAL from Livingston Circuit Court, HON. JAMES M. DAVIS, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action by plaintiff, an employe of defendant, to recover damages for an injury sustained by him while engaged in defendant's services as a bridge carpenter and car repairer. The acts of negligence on the part of defendant, alleged in the petition, are numerous. The plaintiff was ordered, in the line of his duty, to proceed on a wrecking train, to the relief of one of defendant's passenger trains, which had just been wrecked. It is alleged that a wrecking or derrick car was placed in the middle of the train ; that the said car was old, rotten, badly out of repair, and unfit to be placed and run in its position in said train, and that said car had no draw-bar in the forward end, by which it could be coupled to the car ahead of it ; that said car was improperly placed in the center of the train, and was negligently attached to the car ahead of it by means of a rope with an iron hook on the end of it ; that on said car there was a derrick, the arm or boom of which was insecurely fastened, by reason of which the arm or boom was caused to swing to one side of the car in such a manner as to be liable to come in contact with the bridges on the railroad track ; that the said car was run with the arm or boom of the derrick pointing in a forward direction, whereas it should have been turned around and caused to follow the direction in which the car was being run.

There was also an allegation in the petition that a certain bridge on defendant's railroad, known as Brush Creek bridge, was rotten, unsafe and unsound. But, on the trial, it was admitted that this allegation was without any foundation.

It was also alleged that the said train was run at a dangerous rate of speed.

The petition further alleged that, by reason of the enumerated acts of negligence on the part of the defendant, the said Brush Creek bridge was torn away and the plaintiff was thrown into the said creek and greatly injured in divers ways.

The defendant, during the trial, offered in evidence a certified copy of the report of the railroad commissioners of this state, entitled "statement of circumstances attending the accident at Brush Creek, on the Hannibal & St. Joseph railroad, March 1, 1881;" which offer was denied by the court.

The court gave for the plaintiff, among others, the following instructions:

"1. If the jury believe from the evidence that plaintiff entered into defendant's employment as a common laborer, or bridge carpenter, to do and perform such work as was required of him as such employe, then the law presumes that in accepting such work he only assumed the ordinary risks or dangers of such employment and did not assume or contract with reference to any extraordinary risk or danger."

"2. If the jury believe from the evidence that plaintiff was in the employ of defendant as a common laborer or bridge carpenter, and in the line of his duty as such, and in and about the defendant's business under the control and direction of its agents, he received injuries which were caused by the use by defendant of a derrick car which was old and rotten or out of repair, and not reasonably safe and suitable for the business in which it was used, and that the defendant, or its agent, whose duty it was to repair such derrick car knew, or by the exercise of ordinary care might have known, of the

condition of such car, then they are bound to find their verdict for the plaintiff, if they believe from the evidence that plaintiff was exercising ordinary care and did not know of said car being old, rotten or out of repair, and that it was not reasonably safe and suitable for the business in which it was used."

"3. The jury are further instructed that while the defendant did not insure its servants against accident, yet it was its duty towards its employes in prosecuting its business and in making up its trains to run on its road to use care, skill and caution to furnish to its employes reasonably sound and safe cars and to protect the lives of its servants, and the degree of care, skill and caution must be proportionate to the dangerous nature of the means, instruments and appliances used."

"4. If the jury believe from the evidence that A. J. Cartter was master carpenter for defendant, and as such had full power and authority to hire and discharge the employes in his department, and authority over its derrick car and wrecking train with power to direct in which way said derrick car should be placed and run in said train, that the attention of said Cartter was directed to the manner in which said car was placed in said train, and that he knew that the arm or boom of said derrick car was run, or placed in said train pointing in the direction in which said train was being run, and that the injuries to plaintiff were occasioned by said arm or boom being so run, pointing in a forward direction, and that said arm or boom was unsafely and improperly run in said train running in a forward direction, when such injuries to plaintiff would not have been received by him had said Cartter turned such arm or boom so that it would be run in a following direction, and he failed so to do, then the jury should find for plaintiff. Provided, they believe from the evidence that plaintiff did not know that said arm or boom was pointed and being in said train in the direction in which said train was being run, and was without fault on his part."

"5. If the jury believe from the evidence that the plaintiff entered defendant's employment as a laborer or bridge carpenter to do such work as was required of him as such employe, then the law presumes that in accepting such work he only assumed the ordinary risks and dangers of such employment, and did not assume or contract with reference to any risk or danger occasioned by the use of a switch rope in place of a draw-bar in coupling its derrick car in the wrecking train, and if the jury believe from the evidence that the use of such switch rope rendered such coupling more unsafe or dangerous than if a draw-bar had been used for such coupling, and that the plaintiff did not know of the use by defendant of such switch rope and the increased exposure to danger by using the same, and that the injuries to plaintiff were caused or brought about by such unsafe coupling, they will find for plaintiff. Provided, they further find that such switch rope was substituted by order of A. J. Cartter, and that he had charge of the bridge and wrecking department with power to hire and discharge the men in his department and to direct with what material such coupling should be made, and they are further instructed that the proof that the disaster at Brush Creek was caused by such coupling need not be direct and positive, but may be established by facts and circumstances."

"6. If the jury believe from the evidence that the derrick car was decayed in its sills and timbers, and was thereby unsafe for the use to which it was put, and that the condition of such car was known to the defendant's agent, whose duty it was to keep it in repair, or might have been known to such agent by ordinary care on his part, then such knowledge or opportunity to know, was the knowledge of the defendant."

The plaintiff had judgment for $1,000.

Strong & Mosman, for the appellant.

I. Plaintiff, when he entered the service of defendant, assumed the liability to injury from such risks as were ordinarily incident to the employment in which he

was engaged, as conducted by the defendant, and he further assumed such risks and perils as were apparent to ordinary observation, which might be encountered during that service. *Cummins v. Collins*, 61 Mo. 520 ; *Porter v. R. R. Co.;* 71 Mo. 77.

II.   Defendant's negligence ought to be predicated on the act of the agent who placed the car in the train. Whether the agent whose duty it was to repair said car knew its condition or not, does not show negligence in the party who directed its use, or who placed it in the train on his own motion. *R. R. v. Orr*, 84 Ind. 50 ; *Murphy v. R. R.*, 71 Mo. 202.

III.   The *third* instruction for plaintiff is grossly erroneous in the measure of care it enjoins upon defendant. It must not be left to the jury to erect their own standard of care. *Smith v. R. R. Co.*, 69 Mo. 32 ; *Porter v. R. R.*, 71 Mo. 66 ; *Gibson v. R. R.*, 76 Mo. 282.

IV.   The *fourth* instruction is misleading and unintelligible. Besides, it is inconsistent with other instructions and leaves a question of law to be found by the jury. *Deppe v. R. R.*, 36 Iowa 52.

V.   The *fifth* instruction only states a portion of the law applicable to the case as made by the evidence. *Porter case, supra* ; *Cummins case, supra ;* and it gave to the jury a *carte blanche.*

VI.   The *sixth* and *ninth* instructions for plaintiff were neither justified by the evidence, besides being inconsistent with instructions given for defendant.

VII.   The instructions refused to defendant should all have been given, as accurately declaring the law applicable to the case.

VIII.   The court erred in *excluding* the evidence offered by defendant, and in *admitting* evidence objected to by defendant.

IX.   The damages found by the jury are excessive.

H. Lander and H. Lithgow, for the respondent.

I.   Defendant asked the court to define the issues in this case to be "the negligence of defendant in making

up and running a wrecking train in a negligent, careless and unskilled manner in the following particulars: (1) In placing in said train a derrick car that was old, rotten and unfit to be placed and run in the center of said train. (2) That said car had no draw-bar in the forward end thereof by which it could be coupled with the car ahead of it in said train. (3) That said derrick car was improperly placed in the center of said train. (4) That said car was negligently, carelessly, and unskilfully attached to the car ahead of it by means of a rope with a hook on the end of it. (5) That said derrick car had no adequate or safe fastening to keep the upright arm or boom in proper position. (6) That the train was run at a dangerous and reckless rate of speed. (7) That Brush Creek bridge was rotten, unsafe and unsound, and that in consequence of these specified acts of negligence, the car in which plaintiff was placed was thrown into the abyss below where the bridge stood and plaintiff injured. And the answer of defendant puts in issue all these allegations of negligence, and constitutes all the questions of negligence in this case for your consideration." Plaintiff accepted the issues as made and requested by defendant. If error therein it is the fault of defendant, of which it ought not complain.

II. Plaintiff's first, second, fourth, and fifth instructions are the law, and the same as the second, third and fourth for the defendant. *Flynn v. R. R.*, 78 Mo. 195 ; *Conway v. The Vulcan Iron Works*, 62 Mo. 35 ; *Porter v. R. R. Co.*, 71 Mo 66.

III. There was no error in refusing instructions numbered one, two, three, four, five, six, and nine, asked by the defendant—especially the *sixth*. No such practice has been tolerated in this state in cases of this kind prior to the legislation of 1885. See sections 3628, 3629, and 3630, Revised Statutes.

IV. There was no error in *admission* of evidence for plaintiff, nor in *excluding* the report of railroad commissioners offered by defendant. It was no more compe-

tent than an affidavit, being *ex parte*.  Defendant asked *thirty-six* instructions and obtained *nineteen*.

## I.

HALL, J.—The court erred in giving plaintiff's second instruction.  There was no evidence to sustain it.  There was no evidence that the derrick car was old, rotten, or out of repair, except, only, that it was without a draw-head in its forward end.  The only defect testified to by the plaintiff was the want of the draw-head.  The plaintiff testified that he had been called to where the said car was, the evening before the accident, to help put in some timbers, and that "some of the men said they would not fit, and I went away without an examination.  There was no draw-head."

Wenzel, a witness for plaintiff, said, that "one draw-head had been out about a week."  This was the only defect testified to by him.

Hubbard, a witness for plaintiff, testified, on this point, as follows:

Question.  "What was the condition of the wrecking car at that time?"  Answer.  "We were repairing the wrecking car the day before.  Think we had it completed except *putting in the timbers for the draw-head*."

Question.  "What was the condition of the derrick car the evening before when you quit work on it?"  Answer.  "All right except the draw-head."

Hunter, a witness for plaintiff, testified as follows: "I was in defendant's employ March 1, 1881, under Cartter, superintendent of bridge and building department.  He had control of the working of the wrecking car.  Think he gave orders as to repairing it; am not certain.  I was in the wreck.  Some work was done on the car the day before.  One sill, where the draw-head went in, had decayed some.  We were cutting it off to put in new timbers there, to splice in a new piece of the sill, about four feet back from the end.  Handling some

heavy trucks had worn the floor there some. Had known this car eight or ten years. Had no instructions from Cartter about cutting sill down. Part of the floor or deck at that end was taken up the day before the accident. The new pieces of timber were put in the evening before the accident. I did it. There was no draw-head in that end of the car when it went out that morning. There was a sill or stick of timber across the end of the car.''

And again he said: ''I helped put in the splice to the sill the day before. There was only one stick spliced.''

Tabler testified for plaintiff: ''Was in the wreck. Knew the derrick car. I noticed that it was unsound in one 'stringer' and one 'strut' so that it was necessary to take out about six feet of the stringer. The deck was taken off that part the day before the accident, by myself, Hunter, Dale, and Wenzel, by instruction of Mr. Cartter. He told us what pieces he wanted framed to be put in, and what he wanted done. He said nothing about other sills, nor about laying down the deck again. The remaining sills were in proper condition to receive nails when we laid the boards on again. The piece taken out was decayed. There was no draw-head in it when we were working on it. A chain was put around the sill just before we quit work, to make a coupling with.''

Upon this point there was no other evidence for the plaintiff. The evidence for the defendant in respect to this matter added nothing to plaintiff's evidence. This evidence did not support that instruction.

## II.

In *Porter v. R. R. Co.* (71 Mo. 72), the following instruction was approved by the supreme court:

''2. It was the duty of defendant in prosecuting its business, and in the construction of its tracks, to use and exercise care, skill and caution to protect the lives and persons of its employes ; and the degree of care must

be proportionate to the dangerous nature of the means, instruments and machinery used."

The instruction thus approved is in all material respects the same as the instruction in this case, number three, given for the plaintiff. Following the above named case, which we are bound to do, we hold that said instruction number three is not open to the objections made by the defendant.

## III.

The trial court erred in giving for the plaintiff instruction number four. There was no evidence on which to found that instruction. There was no evidence whatever tending to show that the position of the derrick car in the train was improper or negligent. The plaintiff, himself, testified on this point as follows : "I don't know that there is any particular place to put that derrick car in the train, generally. Sometimes they run it in one part of the train, sometimes another." Nor was there any evidence that it was careless or negligent for the defendant to run the derrick car with its arm or boom pointing in the direction in which the train was running. It was the duty of the defendant to use reasonable prudence and care in running its train. There was no evidence tending to show that in running the derrick car in the manner above stated, the defendant failed to use reasonable prudence and care. Upon this point the plaintiff testified : "They sometimes hitched to the derrick car just as it stood and sometimes turned it first. The object was to get it right end first for working with ; when we run to anything we turn the boom the other way. As we were running, we would turn it to use it as we were running. If it had been turned round it would have been safest. If the moorings had broke loose it would not have been so liable to strike the braces of the bridge." And to the same purport was all the testimony upon this point. Such evidence was not sufficient to support that instruction. Evidence that the manner in

which the derrick car was run was not the safest manner in which to run it, was not proof that said manner was careless or negligent; especially was this true, when accompanying such evidence and forming a part thereof, there was evidence that said manner was the manner in which the said car was usually run. For it was said: "They sometimes hitched to the derrick car just as it stood, and sometimes turned it first."

In *Smith v. R. R. Co.* (69 Mo. 37), it is said: "The plaintiff who avers, must prove negligence. Is the fact that there is another kind of rail, of which a guard-rail might be constructed which would be safer for employes, and would equally answer its purpose, sufficient to render the company liable to an employe for injury received by him in consequence of the failure of the company to use that other kind of rail? Is proof of that, proof or any evidence of negligence on the part of the company?" In that case those questions are answered in the negative. Those answers are, in our opinion, controlling on this question. Proof that another machine was safer than the one used by the railroad company, in that case, was not evidence of negligence on the part of the railroad company in using the machine used by them. So, here, proof that it would have been safer for the defendant to have run the derrick car with its arm or boom pointing toward the rear instead of the front of the train, was not evidence of negligence on the part of the defendant for running said car with said arm or boom pointing toward the front of the train.

## IV.

The objections made by the defendant in giving the instruction for the plaintiff—number five—we do not think are well taken. There was sufficient evidence to support the instruction. We do not deem it necessary to notice more than one feature of the ground of these objections, that there was not sufficient evidence. The plaintiff testified that, when he got on the train at Brook-

field, he did not know the manner in which the derrick car was coupled to the car ahead of it. There was evidence tending to show the contrary. But as to that fact there was an issue, and the issue was for the jury.

It is true that the plaintiff testified that after the train left Bucklin, and before it reached Muscle Fork bridge, he learned the manner in which the derrick car was coupled to the forward car; and that the train stopped at said Muscle Fork bridge for some time. But the plaintiff did not admit that he knew the increased danger on account of the manner in which the said car was coupled; and the evidence did not necessarily show that he did know of such increased danger. Although the plaintiff knew the manner of coupling, he had the right to presume that it was reasonably safe, and to rely upon it as such, under the facts set out in that instruction. For, under those facts, as it is seen, the defendant, by its vice principal, Cartter, caused the coupling to be made in the manner in which it was made; and the plaintiff only knew of that coupling after ten miles of the fifteen miles of the trip on which he was bent had been run. Now, was the plaintiff, knowing that two-thirds of the trip had been safely passed, knowing that Cartter was aware of the character of the coupling, and being under Cartter's orders in the line of his duty, bound to know that that coupling was not reasonably safe? We think not. Under the principle enunciated in the case of *Flynn v. R. R. Co.* (78 Mo. 196), and in the cases cited and approved therein, we hold that the plaintiff had the right to rely upon the judgment of the defendant's vice-principal, then present, and to assume that the coupling was reasonably safe. The danger from the use of the coupling was not so patent as to prevent the plaintiff from relying upon the judgment of Cartter. Of course, if the plaintiff was aware of the danger to be anticipated from the use of the coupling, he cannot be permitted to recover on account of the use of it. But whether the plaintiff knew of such danger was properly submitted to the jury. *Flynn v. R. R. Co.*, *supra*, and authorities cited.

In the case of *Porter v. R. R. Co.* (71 Mo. 72), the following instruction was approved: "If the jury believe from the evidence that the plaintiff, by contract with defendant, entered into her employ as a brakeman in her yards in the city of St. Joseph, to do and perform such work as was required of him as such employe, then the law presumes that in accepting such work he only assumed the ordinary danger of such employment, and did not assume or contract with reference to any risk or danger arising or resulting from an improper or defective track used by defendant in the prosecution of its business, unless he, the plaintiff, knew of the defects and dangers, and the increased dangers arising from such defects."

Following that case, we hold that the objections made by the defendant to the following part of said instruction number five, are not well made: "Then the law presumes that in accepting such work he only assumed the ordinary risks and dangers of such employment, and did not assume or contract with reference to any risk or danger occasioned by the use of a switch rope in place of a draw-bar."

The principal objection made to that instruction, or at least the objection most strenuously urged against it, by the defendant, is, that by it the defendant's liability is made to turn upon the relative safety between the use of a draw-bar and the switch rope as a means of coupling; and that the real question is: "Was the use of the rope as a coupling reasonably safe?" It is undoubtedly the law, as hereinbefore stated by us, that whether a master has been guilty of negligence in the use of a certain machine cannot be determined by comparing the safety in the use of the machine in question with the safety in the use of another machine adapted and used for the same purpose; and that the question of negligence in such case is always determined by an answer to this question: "Was the master in the exercise of ordinary and reasonable care, under the circumstances, in using the machine which he did use?" *Cagney v. R. R. Co.*, 69 Mo. 416;

*Smith v. R. R. Co.*, 69 Mo. 32.    But in those cases a distinction is clearly, and, as we think, properly made between the use of a complete machine and the use of a defective machine.    The principle enunciated in those cases, as therein stated, is not applicable to a case in which a defective machine is used.

The machine in this case was defective.· In this case all the evidence disclosed that the ordinary machine for coupling cars consists of a draw-head, of a draw-bar, and an iron pin ; and that the coupling in this case was made without either the draw-head, the draw-bar, or the pin, for the reason that the derrick car was defective, being without the draw-head.    It is true that the defendant was only required to use reasonably safe machinery.    In this case the ordinary machinery had been supplied but had become defective.    The defendant used the defective car, and attempted to overcome the defect by using a rope instead of the draw-head, the draw-bar, and the iron pin.    We think that the trial court properly declared as a matter of law, that, if the means substituted for coupling the defective car were less safe than would have been the means used, had the car not been defective, such substituted means were not reasonably safe.    As to which of two complete machines he shall use the master has the right to exercise a sound judgment, and he will be protected, if the machine used by him be reasonably safe, although the other machine may, in fact, be safer. But when a master will use a defective machine and patch it up for the moment's use, or use temporarily a rope as coupling instead of the draw-head, draw-bar, and iron pin, in ordinary use, the master is liable for any injury done by reason thereof, if the means used are not as safe as would have been the means used, had the defect not existed.    In other words, the master may use any reasonably safe machine he chooses to use, but the master may not use a defective machine, unless it is as safe as the complete machine would have been.

## V.

The court erred in giving for plaintiff instruction number six. There was no evidence to support that instruction, as we have explained in our consideration of plaintiff's second instruction.

## VI.

Upon another trial of this case plaintiff's instruction, number one, should not be given. It is a mere abstraction. And besides, its meaning is not certain, and it does not contain a complete statement of the law.

## VII.

The court properly denied the defendant's offer of the report of the railroad commissioners in evidence. That report was mere hearsay.

## VIII.

The plaintiff claims that the defendant cannot complain of the court having submitted to the jury the issues of fact contained in his instructions numbered two and four, for the reason that those same issues were submitted to the jury at its request in its instruction number one. While it is true that that was done, it was done after the court's refusal of instructions asked by the defendant. Taking those issues from the consideration of the jury, the plaintiff's position is, therefore, not tenable.

The judgment is reversed and the cause is remanded. All concur.