PETER DESROSIERS *vs.* AUGUSTUS O. BOURN.

PROVIDENCE—FEBRUARY 19, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Contributory Negligence. Master and Servant. Defective Machinery.*

A servant who is injured in the operation of a machine, by reason of having his fingers caught between the rolls while feeding material into the machine,

on account of the failure of the appliance intended to stop the machine to work, is guilty of contributory negligence, although he may have had no knowledge of the fact that the appliance could not stop the machine, where he also had no reason to believe that the appliance could stop the machine.

A servant is bound by such knowledge as he ought tó have as well as by what he actually has.

TRESPASS ON THE CASE for negligence. Heard on petition of defendant for new trial, and granted, and judgment ordered for defendant.

DOUGLAS, J. The plaintiff, while employed by the defendant to operate a calender, used for rolling India rubber into sheets, was injured by having his arm drawn in between the rolls, which were an inch or an inch and a half apart, by means of which it was crushed and the flesh upon it was torn and mangled.

His declaration, which was in one count, alleged that at the time of the accident the plaintiff was in the exercise of due care; that the machine was in a defective condition, which prevented it from being stopped until word was sent to the engine-room; that by reason of the failure to stop the machine, as aforesaid, the injuries to the plaintiff were caused.

Upon demurrer to this declaration the court held that the cause of action set out was not the injury suffered from getting the fingers caught in the rolls, but the damage caused by delay in stopping the machine; and that, as the plaintiff did not know that there was a defect in the machine which rendered it incapable of being stopped until word could be sent to the engine-room, the danger was not an obvious one, and hence not an assumed risk; and further, that, as stated in the declaration, the facts did not show contributory negligence. 24 R. I. 288.

Upon trial of the case with a jury, a verdict was found for the plaintiff, with special findings as follows:

(1) That the plaintiff did not get his fingers caught in the rolls through his own carelessness.

(2) That the lever provided for operating the clutch in question at the time the plaintiff was injured was not of sufficient

length for that purpose while a full feed of rubber was being run between the rolls of this calender.

(3) If the clutch had operated at the time the witness Simpson tried to operate it, the plaintiff would not have suffered any injury to his arm.

The defendant now prays for a new trial on the grounds that the general verdict and the special findings are against the law and the evidence and that the court erred in its rulings on the law. In the argument no exceptions to the rulings of the trial court are referred to, but the grounds insisted upon are that the evidence does not show legal negligence on the part of the defendant, but does disclose contributory negligence on the part of the plaintiff. That is—the defendant disputes the first and third special findings and the implication from the second. The question whether or not the plaintiff was negligent is the important one in the case, and it seems to us that there is no evidence to support the finding of the jury that he was not negligent. All the testimony upon this issue comes from the plaintiff himself. On this point it is as follows:

"Q. How old were you at that time? A. Twenty-three years old.

"Q. How long did you work on there as calender man? A. Just about six or eight weeks, six or seven weeks.

"Q. What happened to you there on the 26th of October? A. I got caught.

"Q. How did you get caught? A. Caught by my fingers.

"Q. What were you doing at the time? A. I was guiding the strip of rubber right between the rolls.

"Q. How did you get your finger caught? A. It is impossible for me to say. I was guiding the strip, and it drew my hand in there.

"Q. Were you guiding it in different than any other day? A. No sir; same as usual.

"Q. At the time you were hurt, Mr. Desrosiers, you were in charge of this machine, of operating it? A. Yes sir; I was.

"Q. And you had been in charge of it somewhere about six months? A. No sir; I hadn't. Been in charge about six weeks.

"Q.  You have worked about it?  A.  Worked about it six months.

"Q.  You had learned how to operate it?  A.  Yes, I learned by myself.

"Q.  But you had learned, hadn't you?  A.  Yes sir.

"Q.  You can't tell how you happened to get them in? A.  No sir; I can't. ·

"Q.  When you feed this rubber, when you first put it in, do you push it in with your fingers between the rolls?  A. Yes sir.

"Q.  Push your fingers right in between the rolls when you are inserting a piece of rubber.  A.  Did once.  That is all.

"Q.  And other times you had put it in and didn't anything happen to it?  A.  No sir.

"Q.  Now when you insert the end of this rubber, you take it and push it in with your fingers?  A.  Yes, sir.

"Q.  And you had been doing that for how long?  A. About six weeks.

"Q.  And you didn't know if you got your fingers in between the rolls you would get hurt?  A.  I never gave that a thought.

"Q.  You mean to tell this jury that you are not sufficiently intelligent to know if you got your fingers between those rolls they would be hurt?  A.  No, sir; I mean to say I was ignorant of the thought if I ever got my fingers caught there I would be hurt.

"Q.  What do you mean by that; that the rolls wouldn't hurt them or that you didn't think about them?  A.  I didn't know they would hurt me because I never expected to get caught there."

The plaintiff's counsel admit that he assumed the obvious risk of getting his fingers caught, as they must under the decision in *Day* v. *Achron*, 23 R. I. 627, and *Morancy* v. *Hennessy*, 24 R. I. 205; but they justify him in taking that risk, on the ground that he had the right to assume that the clutch could be operated at will to stop the machine when rubber was being run between the rolls.  Their argument is that it

was no carelessness to assume a risk which he did not know to be dangerous.

We think, on the contrary, that it is careless for one to assume a situation apparently dangerous and not known to be safe. The plaintiff in this case had no reason to suppose that this machine could be stopped by the lever and clutch when it was loaded, and it was carelessness to assume the risk of the machine continuing its motion until the load had passed through.

He testifies as follows:

"Q. When this clutch is shipped and the power is taken off, how soon after will the rolls stop revolving? A. The only time I ever seen it stop was when the machine was empty. It stopped instantly.

"Q. Did you ever, while you was on the machine, have occasion to ship this clutch while there was rubber between the rolls? A. No sir; I never did.

"Q. Did you ever see anybody ship it? A. No sir; I never did.

"Q. Did you ever try to stop this machine while it was in motion? A. I never did; never had any occasion to.

"Q. Do you mean to say that during that time you were working about the machine, or in charge of it, that you never used that clutch at all? A. I did use it quite often when there was nothing in the machine.

"Q. You knew the clutch—you were familiar with it, were you not? A. Yes; was quite familiar with it.

"Q. You mean to say you never saw this machine stop with a load on it? A. Yes; that is what I mean to say.

"Q. And you never had any occasion to have it stopped? A. No sir; never did."

(1) If he did not know that the clutch could not stop the machine while it was loaded, neither had he any reason to believe that the clutch could stop the machine when it was loaded. He was, therefore, using a machine which was obviously capable of exerting great crushing power, and was not informed that the machine could be stopped while it was loaded. He fur-

ther knew that if his fingers were caught and the machine did not stop, his arm must follow his fingers.

He testifies, also, that he had made himself familiar with the machine and its various parts while he worked upon it for six months, and observed how others worked, and at the end of that time he was given full charge of it. He knew the length of the lever and the character of the clutch, and all its obvious qualities. He could hardly have been ignorant that a heavy load on the machine would make the working of the clutch more difficult then when there was no load. What he did know and see, by his own confession, was enough to put a man of ordinary prudence upon inquiry and to suggest to him great care in feeding in the sticky rubber.

A workman is bound by such knowledge as he ought to have, as well as by what he actually has. *Missouri K. & T. R. Co.,* v. *Wood,* 35 S. W. Rep. 879; *Hayden* v. *Smithville Manufacturing Co.,* 29 Conn. 548.

Can anyone say that, in these circumstances, it was the act of a prudent man to allow his fingers to be caught? If he had intentionally placed his fingers between the rolls, on the chance that somehow the machine could be stopped before his wrist was drawn in, would it not have been the most foolhardy assumption of a risk? And was it not incumbent upon him to take care that he did not do the same thing involuntarily? It seems to us that he was guilty of negligence in allowing his fingers to be drawn in without positive knowledge that the machine was so constructed as to be sure to stop at the fingers and not to draw in the arm.

This is not the case, as set forth in the declaration, of an assumption of the chance of suffering a trifling injury which became serious by the intervention of an instrumentality which an intelligent person had no reason to expect would intervene, but it was the assumption of a condition which involved in its natural consequences the possibility of very great damage. It was much the same case as that of a person skating towards thin ice with no knowledge of the depth of the water beneath. A break in the ice might only wet his feet or it might drown him. If he carelessly runs the risk of

breaking through, he takes the chance of suffering the heavier penalty. So here, so far as the plaintiff knew, getting his fingers between the rolls might result in slight or severe injury, and by his thoughtless act he took the risk and suffered the worse alternative.

If the jury had understood the evidence on this point they could not have reached the conclusion which they found. If one of them, while taking the view in the case, had been invited to put his fingers between these rolls, with the machine loaded and in motion, and he had asked, "Can you stop the machine before my hand and arm are drawn in?" and the answer had been, "We do not know; we have never tried to stop it while loaded," is it conceivable that he would have accepted the invitation? Yet what no sane man in the circumstances would have done intentionally the plaintiff did thoughtlessly, and this was negligence. *Pratt* v. *Prouty*, 153 Mass. 333.

The plaintiff argues that this act was not the proximate cause of the accident, and cites among other cases *Hampson* v. *Taylor*, 15 R. I. 83. The court in that case adopts the rule stated by Dillon, that, "where two causes combine to produce the injury, both in their nature proximate, the one being the defect in the highway" (or machine), "and the other some occurrence for which neither party is responsible, the corporation" (or defendant) "is liable, provided the injury would not have been sustained but for the defect in the highway" (or machine).

In the case at bar, if we find that any defect existed in the machine the concurring proximate cause is not an occurrence "for which neither party is responsible," but it is the plaintiff's own negligence and to hold the plaintiff excused and the defendant liable in such a case would be to deny the universally approved doctrine of contributory negligence. The reasoning of the court in *Prue* v. *N. Y. Prov. & Boston R. R. Co.*, 18 R. I. 360, has no application, for in this case, as the facts were, after the fingers became entangled, the damage was inevitable; no interposition of the defendant was then possible. In the case cited it appeared that when the plaintiff was leaving the track, and could have done so safely, the

defendant's servant shut the gate before him and prevented him from doing so. It was held that, if this was so, the positive act of the defendant's servant was the proximate cause of the injury. If in this case the plaintiff had placed his fingers in the machine while it was at rest, and the defendant, knowing that fact, had carelessly started the machine, the cases would have been analogous.

The plaintiff's counsel candidly state the situation when they say in their brief:

"If the plaintiff's getting his fingers entangled and having them drawn between the rolls was in the eye of the law the proximate cause of the injury, then the plaintiff is not entitled to recover." And to this conclusion we are brought.

The other two special findings were partly supported by the evidence.

It is reasonably certain that, if the machine had stopped when the plaintiff cried out, his fingers only having been drawn between the rolls, he would not have been seriously injured, and the injuries which he actually received would have been avoided; but it is not certain that the machine would have stopped instantly if the clutch had been disconnected.

It is also certain that the clutch could not be operated to stop the machine while it was loaded, but it is not clear that any extension of the length of the lever, compatible with convenient use, would have enabled the clutch to be so operated. The expert witnesses all agreed that without facts and measurements which were not given them, they could not state how long the lever should have been.

According to the evidence, the lack of capacity to be stopped under a load was inherent in the kind of clutch used, the jaws of which moved into each other with ease when no pressure was exerted upon their faces, but separated with great difficulty while the power from the engine on the one hand, and the resistance of the gum between the rolls on the other, pressed these surfaces together. The declaration calls this a defect in the machine, but the evidence shows that it was a feature of ordinary construction in general use upon such machines, and this is the test of reasonable safety. *Benson*

v. *Railroad Co.*, 23 R. I. 147–153. The machine was well adapted for its intended use, viz., to exert a steady and continuous pressure upon the rubber gum inserted between its rollers from the time it was started until the load had passed through.

In *Smith* v. *Railway Co.*, 69 Mo. 32, 35, the court says: "Machinery is not necessarily defective because dangerous. The most perfect steam-engine requires skill and care in its management and is a dangerous agent. Circular saws, planing machines and nearly all machines used in woodwork are dangerous, but not therefore necessarily defective. This distinction must be kept in view in determining all questions which arise in suits for injuries received by employees in using implements and machinery furnished by the employer."

The plaintiff himself testifies that during his acquaintance with the machine, for a period of six or seven months, not one occasion arose to stop the machine while a load was going through. It seems that nothing but accident or intentional error in operating the machine would ever require that it should be so.

But it was not the duty of the defendant to anticipate that the workman would use the machine carelessly or to alter or rebuild the machine to prevent the effects of carelessness.

The rule laid down in *Richards* v. *Rough*, 53 Mich. 212, is approved in Bai. Pers. Inj. 222, as follows: "A manufacturer may choose the kind of machinery he desires to use, be it old or new, and may control his business in his own way provided he does no unlawful act. If the machinery is sound, well made and kept in repair, he will not be liable for an accident occurring to an employee when the only ground alleged is that there is a better and safer kind used for the same purpose. Employers are only bound to use ordinary care in protecting an employee against danger not within his knowledge or observation. The comparative merits of machinery of different kinds, whether as to safety or utility, are questions most difficult to solve, and to say it shall be left to a jury to determine in a given case what kind an employer shall use would be imposing a duty upon a court and an injustice upon the party

alike intolerable." See also *Sweeney* v. *Berlin Envelope Co.,* 101 N. Y. 520; *Hickey* v. *Taaffe,* 105 N. Y. 26.

Again, it is not proven that the failure of the ordinary means of stopping the machine to work in the emergency aggravated the plaintiff's injuries. It is not plain that if the lever had been thrown over, and the jaws of the clutch had been separated, the rolls would have ceased to revolve any sooner than they did when the power was cut off by the alternative means which were used.

The declaration alleges that the machine did not stop until "word was sent to the engine-room." The obvious meaning of this expression, and the meaning which the court accepted on the hearing upon the demurrer, was that some person went to the engine-room and told the engineer to stop the engine.

The evidence, on the contrary, shows that the defendant had attached to the engine a device for shutting off steam instantly by force of an electric current, and that in several accessible places in the works buttons were placed to control this current, and the workmen were instructed in case of accident to press one of these buttons. On the occasion of this accident the plaintiff cried out when his fingers were caught. One of the workmen grasped the lever and attempted to disengage the clutch. Another workman heard the cry and pushed one of these buttons, which was within his reach upon the wall. Instantly the power was shut off, and in a very few seconds the machine stopped. There was no delay, and no time was consumed except that required for the workman to apprehend the cry and then to extend his hand to the button, and then for the friction of the machinery and the resistance of the load to neutralize the momentum of the machinery. The machines were all loaded that day, and the interval between the cutting off of the power and the cessation of motion would be the shortest possible under any circumstances.

Upon the plaintiff's theory of his case it was incumbent upon him to show that the rolls revolved longer after the button was pressed than they would have done if the clutch had been operated. For a comparision of these intervals of time there are no reliable data in the testimony. The workman

who tried to operate the clutch had no idea of the time which elapsed—paid no attention to it. The workman who pushed the button thinks that the machine was stopped in not over six or eight seconds after he touched· it. The evidence is contradictory as to how long the rolls would revolve when the clutch was disconnected, with the machine empty; and with all the machines loaded, as they were at that time, it is difficult to see how disconnecting one would stop it any more· quickly than shutting the power off, all at once.

There is, therefore, no satisfactory evidence that the electric device which was provided, and which actually operated, did not stop the machine as quickly as another form of clutch or a longer lever could have done; and so the plaintiff's contention that the absence of a longer lever caused the severe injuries of the plaintiff is unsupported.

If the allegation that sufficient time was lost to send word to the engine-room is material, as the strict rules of pleading require, this statement is positively proven to be false.

From this discussion of the case it appears that no neglect of duty on the part of the defendant is shown to have caused the injuries to the plaintiff, and that his own carelessness was the proximate cause of the accident.

The case must, therefore, be remanded to the Common Pleas Division, with directions to enter judgment for the· defendant.

*Job S. Carpenter*, for plaintiff.

*Herbert A. Rice*, for defendant.